1  CUAUHTEMOC ORTEGA (Bar No. 257443)
   Federal Public Defender
2  ADITHYA MANI (Bar No. 301880)
   (E-Mail: Adithya_Mani@fd.org)
3  Deputy Federal Public Defender
   411 West Fourth Street, Suite 7110
4  Santa Ana, CA 92701
   Telephone: (714) 338-4500
5  Facsimile: (714) 338-4520

6  Attorneys for Defendant
   JOSE LUIS PEREZ HERNANDEZ
7



8

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11                **SOUTHERN DIVISION**

12

13  UNITED STATES OF AMERICA,          Case No. 25-MJ-00195-DUTY

14              Plaintiff,             **MEMORANDUM OF LAW IN
                                       OPPOSITION TO GOVERNMENT'S**
15       v.                            **REQUEST FOR DETENTION**

16  JOSE LUIS PEREZ HERNANDEZ,

17              Defendant.

18

19

20

21

22

23

24

25

26

27

28

                        1

# **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................... 1

II. BACKGROUND ..................................................................................................... 1

    A.    The Bail Reform Act's evenhanded treatment of noncitizen defendants .... 1

    B.    The USAO's recent categorical opposition to release for illegal reentry
    defendants ........................................................................................................ 2

III. ARGUMENT ........................................................................................................ 4

    A.    The government is not entitled to a detention hearing unless it points to
    specific facts showing a "serious risk" of flight ............................................ 4

    B.    The government cannot justify detention on either flight risk or danger .... 5

        1.    Neither undocumented status nor an illegal reentry charge
        proves risk of flight ............................................................................ 6

            a.    Immigration defendants almost never flee ............................... 6

            b.    An illegal reentry defendant is not likely to face a long
            sentence ....................................................................................... 7

            c.    The alleged weight of the evidence in illegal reentry cases
            does not favor detention ............................................................. 7

        2.    Purported risk of danger is not a valid basis for detention here ........ 8

    C.    The government is not entitled to temporary detention under 18 U.S.C.
    § 3142(d) when the prosecution is initiated by immigration authorities ..... 9

    D.    This Court should not stay any release order ............................................. 11

        1.    The Bail Reform Act does not authorize stays of release orders .... 11

        2.    Even if Congress had authorized stays, they should be incredibly
        rare ................................................................................................... 12

IV. CONCLUSION ................................................................................................... 14

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Manrique v. Kolc,*
4      65 F.4th 1037 (9th Cir. 2023)........................................................................13

5

*Mi Familia Vota v. Fontes,*
6      111 F.4th 976 (9th Cir. 2024)........................................................................13

7

*Nken v. Holder,*
8      556 U.S. 418 (2009)......................................................................................12

9

*United States v. Ailon-Ailon,*
        875 F.3d 1334 (10th Cir. 2017)....................................................................10
10

11

*United States v. Figueroa-Alvarez,*
        681 F.Supp.3d 1131 (D. Idaho 2023)...........................................................10
12

13

*United States v. Flores-Basurto,*
        CR 21-530-RGK, Dkt. 81 (C.D. Cal. Apr. 20, 2022).....................................7
14

15

*United States v. Friedman,*
        837 F.2d 48 (2d Cir. 1988).............................................................................9
16

17

*United States v. Hernandez,*
        CR 17-744-CAS, Dkt. 77 (C.D. Cal. Nov. 27, 2023)......................................8

18

19

*United States v. Himler,*
        797 F.2d 156 (3d Cir. 1986)......................................................................4, 9

20

*United States v. Lett,*
        944 F.3d 467 (2d Cir. 2019)..........................................................................10
21

22

*United States v. Motamedi,*
        767 F.2d 1403 (9th Cir. 1985)................................................................1, 2, 7
23

24

*United States v. Nwabueze,*
        CR 10-411-MMM, Dkt. 36 (C.D. Cal. June 28, 2010)....................................9

25

26

*United States v. Ramirez,*
        CR 21-45-JLS, Dkt. 200 (C.D. Cal. Jan. 19, 2025)........................................7

27

*United States v. Salerno,*
28      481 U.S. 739 (1987).........................................................................................1

iii

*United States v. Salkicevic,*
  2015 WL 525556 (N.D. Ill. Feb. 10, 2015) ................................................... 8

*United States v. Santos-Flores,*
  794 F.3d 1088 (9th Cir. 2015) ..................................................2, 3, 9

*United States v. Schoeplin,*
  CR 22-121-FMO-MAR, Dkt. 51 (C.D. Cal. May 19, 2022) ........................... 9

*United States v. Soriano Nunez,*
  928 F.3d 240 (3d Cir. 2019) ................................................... 10

*United States v. Townsend,*
  897 F.2d 989 (9th Cir. 1990) ................................................... 4

*United States v. Twine,*
  344 F.3d 987 (9th Cir. 2003) ................................................... 9

*United States v. Villatoro-Ventura,*
  330 F. Supp. 3d 1118 (N.D. Iowa 2018) ................................................... 10

*United States v. White,*
  2021 WL 2155441 (M.D. Tenn. May 27, 2021) ................................................... 5

**Statutes**

8 U.S.C. § 1326................................................*passim*

18 U.S.C. § 3142................................................*passim*

18 U.S.C. § 3145................................................11, 12

18 U.S.C. § 3626................................................12

**Other Authorities**

Fed. R. Crim P. 38 ................................................12

U.S. Department of Justice, Bureau of Justice Statistics, *Pretrial Release
  and Misconduct in Federal District Courts, Fiscal Years 2011-2018,*
  (Mar. 2022) ................................................... 6

U.S. Department of Justice, Bureau of Justice Statistics ustice Statistics,
  *Pretrial Release and Misconduct in Federal District Courts, 2008–
  2010* (Nov. 2012)................................................... 6

U.S. Sentencing Commission, "Quick Facts: Illegal Reentry Offenses"
(July 2024) ............................................................................................................7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I. INTRODUCTION

Under Bail Reform Act, defendants charged with illegal reentry should be presumptively released pending trial. Nonetheless, the government has sought detention in every one of the dozens of illegal reentry cases it has recently filed. As part of this blanket policy of detention, the government has reached for inapplicable and even non-existent statutory provisions, including seeking temporary detention under 18 U.S.C. § 3142(d) and prolonging detention by uniformly seeking stays of release orders.

This Court should not mistake the government's broad-brush charging decisions for considered analysis of the facts and the law. Contrary to the government's contentions, statistics show that defendants charged with illegal reentry, who generally receive short sentences, are overwhelmingly likely to comply with the terms of their release. The government is also wrong to argue that 18 U.S.C. § 3142(d)—a provision that allows for temporary detention for the purpose of notifying immigration authorities—applies when immigration authorities themselves initiate the prosecution. Moreover, not only does the Bail Reform Act not authorize the stay of a release order, a stay would also require this Court to make internally inconsistent findings.

In sum, this Court should reject the government's reflexive request for detention, and instead order the defendant released on reasonable conditions.

## II. BACKGROUND

### A.     The Bail Reform Act's evenhanded treatment of noncitizen defendants

Our Constitution mandates that "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act (BRA) must be read to "fall within that carefully limited exception." *Id.* Under the BRA, release should be denied only "in rare circumstances" and "[d]oubts regarding the propriety of release should be resolved in the defendant's favor." *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985).

1

1  The BRA imposes no categorical bar based on immigration status or alienage.

2  *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) ("Congress chose

3  not to exclude removable aliens from consideration for release or detention in criminal

4  proceedings."). Alienage or immigration status may be relevant to a detention

5  determination, but it is an insufficient basis, on its own, to deny pretrial release. *Id.*; *see*

6  *also Motamedi*, 767 F.2d at 1407 (holding that defendant's alienage "does not tip the

7  balance either for or against detention"). For defendants charged with immigration

8  offenses like 8 U.S.C. § 1326, the BRA places the burden on the *government* to justify

9  detention, effectively creating a presumption in favor of release. *See id.*

10  **B.   The USAO's recent categorical opposition to release for illegal reentry**

11  **defendants**

12  Since February 24, 2025, the government has overwhelmed the criminal duty

13  calendar with dozens of cases charging defendants with unlawful reentry in violation of

14  8 U.S.C. § 1326.[1] Indeed, a March 3 press release proclaimed that in "recent weeks"

16  [1] *United States v. Israel Cuadra*, 2:25-mj-00872-DUTY ; *United States v.*
17  *Erasmo Hermosillo-Martin*, 25-mj-573-DUTY; *United States v. Juan Moranda Ortiz*,
18  2:25-mj-00850-DUTY; *United States v. Hector Ruelas-Diaz*, 2:25-mj-00765-DUTY;
    *United States v. Oscar Parra-Reyes*, 2:25-mj-00651-DUTY; *United States v. Valentin*
19  *Vidal-Lopez*, 2:25-mj-00781-DUTY; *United States v. Ramon Rangel Arellano*, 5:25-
    mj-00084-DUTY; *United States v. Daniel Adan Lazaro*, 2:25-mj-00847-DUTY; *United*
20  *States v. Ricardo Reynosa Garcia*, 2:25-mj-00528-DUTY; *United States v. Luis*
21  *Roberto Calderon-Collantes*, 5:25-mj-0085-DUTY; *United States v. Angel Navarro*
    *Camarillo*, 8:25-mj-00116-DUTY; *United States v. Oscar Parra-Reyes*, 2:25-MJ-
22  00651-DUTY; *United States v. Rodrigo Gonzalez*, 2:25-mj-00875-DUTY; *United*
23  *States v. Nicolas Rodriguez*, 2:25-cr-00097-TJH-1; *United States v. Cristobal*
    *Alvarado-Elico*, 2:25-mj-00690-DUTY; *United States v. Rigoberto Bautista-*
24  *Hernandez*, 2:25-mj-00900-DUTY; *United States v. Ireono Avalos-Losa*, 2:25-mj-
25  00898-DUTY; *United States v. Santiago Delfino Pellcastre*, 2:25-mj-00905-DUTY;
    *United States v. German Soto Mendozo*, 2:25-mj-00738-DUTY; *United States v. Juan*
26  *Magdaleno-Perez*, 2:25-mj-00897-DUTY; *United States v. Estaban Ochoa*, 2:25-mj-
27  00815-DUTY; *United States v. Rolando Gomez-Gomez*, 2:25-mj-00930-DUTY ;
28  *United States v. Cesar Castro*, 2:25-mj-00901-DUTY; *United States v. Rogelio Tapia-*

2

1  federal prosecutors have filed § 1326 charges against 126 previously removed "illegal

2  aliens." U.S. Attorney's Office for Central District of California, Press Release, March

3  3, 2025 ["USAO Press Release"].[2]

4       Rather than assessing each of these defendants individually, the government has

5  instead taken a blanket approach of pushing every avenue to keep every illegal reentry

6  defendant in detention pending trial. Specifically, the Office of the Federal Public

7  Defender has confirmed that the government has sought pretrial detention in *every*

8  recently filed illegal reentry case. Moreover, in virtually every such case, the

9  government has argued for temporary detention pursuant to 18 U.S.C. § 3142(d).

10  Further, in *every* case in which a magistrate judge has ordered one of these defendants

11  released, the government has sought a stay of the defendant's release order, asking the

12  magistrate judge to keep the defendant detained while the government appeals.

13       Thus, this Court should not assume that the government's request for detention

14  here is based on even-handed consideration of the particular facts of this case. Rather,

15  this Court should see the government's request for what it is: the result of a blanket

16  policy directive at odds with "individualized evaluation" that the law requires. *Santos-*

17  *Flores*, 794 F.3d at 1091.

18

19

20

21

---

22  *Morales*, 2:25-mj-00730-DUTY; *United States v. Hector Oscar Jimenez Moreno*, 8:25-

23  mj-00127-DUTY; *United States v. Edgar Javier Torres Gomez*, 2:25-mj-720-DUTY;
     *United States v. Luis Nunez-Salgado*, 8:25-mj-00132-DUTY; *United States v. Victor*

24  *De La Torre*, 8:25-mj111-DUTY; *United States v. Arcenio Lozano Camacho*, 5:25-mj-
     00058-DUTY; *United States v. Salomon Morales-Campos*, 2:25-mj-00771-DUTY;

25  *United States v. Matias Duran-Gonzalez*, 2:25-mj-00682-DUTY; *United States v.*

26  *Bryan Chavarria-Bucio*, 5:25-mj-00078-DUTY; *United States v. Willebaldo Pena-*
     *Hinojosa*, 5:25-mj-00102-DUTY.

27

28       [2] Available at https://www.justice.gov/usao-cdca/pr/federal-prosecutors-charge-
     126-previously-removed-illegal-aliens-many-felony-criminal (last accessed March 5,
     2025).

1          **III. ARGUMENT**

2     **A.     The government is not entitled to a detention hearing unless it points to**

3           **specific facts showing a "serious risk" of flight**

4          As an initial matter, the government is not even entitled to a detention hearing in

5     the typical illegal reentry case unless it can make a fact-specific showing of a "serious

6     risk" of flight. § 3142(f)(2)(A). The Bail Reform Act splits the determination of

7     detention versus release into two parts. The Court must first determine whether the

8     government is entitled to a detention hearing at all. 18 U.S.C. § 3142(f). If the Court

9     concludes the government is not entitled to a detention hearing, then the Court must

10    order the person released on appropriate conditions. 18 U.S.C. § 3142(a), (b), (c). If the

11    Court finds that the government is entitled to a detention hearing, then the Court holds

12    such a hearing to determine whether there are conditions that can be imposed that

13    would reasonably assure the person's appearance and the safety of the community. 18

14    U.S.C. § 3142(f).

15         The statute provides that the government is automatically entitled to a detention

16    hearings in cases involving certain serious charges. § 3142(f)(1)(A)-(E). Illegal reentry

17    is not among the named offenses. *See id.* Thus, in the vast majority of illegal reentry

18    cases, the government is only entitled to a detention hearing if it can prove "a serious

19    risk that such person will flee." § 3142(f)(2)(A). To make that showing, the government

20    must point to evidence in the record. *See, e.g.*, *United States v. Himler*, 797 F.2d 156,

21    160 (3d Cir. 1986) (explaining that when only basis for detention is § 3142(f)(2)(A),

22    defendant "may be detained only if the record supports a finding that he presents a

23    serious risk of flight"). Requiring proof that a person actually poses a serious risk of

24    flight comports with BRA's purpose—in accordance with the Due Process clause—of

25    allowing release for most federal defendants. *See United States v. Townsend*, 897 F.2d

26    989, 993-94 (9th Cir. 1990) (noting the following three principles of the BRA: "1.

27    Federal law has traditionally provided that a person arrested for a non-capital offense

28

1  shall be admitted to bail. . . . 2. Only in rare cases should release be denied. . . . 3.

2  Doubts regarding the propriety of release are to be resolved in favor of defendants.").

3      Further, § 3142(f)(2)(A) is the only time the BRA uses the phrase "serious risk"

4  of flight. That distinction suggests that "serious risk of flight" denotes a special

5  danger—*i.e.*, that the defendant will flee the jurisdiction—beyond simple non-

6  appearance. *United States v. White*, 2021 WL 2155441, at *10 (M.D. Tenn. May 27,

7  2021) (recognizing that "serious flight risk" is "narrower" than "flight risk" and is

8  "distinct from 'risk of non-appearance"). Legislative history confirms this reading. *See*

9  S. REP. NO. 225, 1983 WL 25404, at *12 ("Under subsection f(2), a pretrial detention

10  hearing may be held" in a case that involve "a serious risk that the defendant will flee"

11  (citing *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir. 1978) (holding that only a

12  "rare case of extreme and unusual circumstances . . . justifies pretrial detention"))).

13      The fact of an illegal reentry charge cannot, by itself, amount to a serious risk of

14  flight. If that were the case, Congress would have included 8 U.S.C. § 1326 as one of

15  the enumerated offenses that automatically require a detention hearing. The fact that

16  Congress did not do so indicates that the government must point to more than the facts

17  underlying the charge to prove a serious risk of flight.

18  **B.    The government cannot justify detention on either flight risk or danger**

19      Based on its broad-brush approach in these cases, the government apparently

20  believes that facts common to all illegal reentry defendants are sufficient to support a

21  detention order under 18 U.S.C. § 3142(e) in every case. The government is wrong.

22  Contrary to the government's unsupported supposition, data shows that immigration

23  defendants and defendants without lawful immigration status are exceedingly unlikely

24  to flee. Moreover, illegal reentry defendants generally face light sentences and often

25  prevail over the government. The government is also wrong to suggest that alleged

26  danger can be a lawful basis of detention. Both the Ninth Circuit and Central District

27  Court have made clear that detention in these cases may only be ordered based on flight

28  risk; danger is an appropriate consideration only in setting conditions of release.

**1.     Neither undocumented status nor an illegal reentry charge proves risk of flight**

The government typically argues that three factors common to all illegal reentry defendants suffice to prove flight risk: undocumented status, the alleged sentencing exposure, and the supposed weight of the evidence. Hard data and black-letter law shows the government is wrong on all three counts.

**a.     Immigration defendants almost never flee**

Contrary to the government's suggestion, alleged undocumented status is not proof of potential flight risk. Indeed, the Department of Justice's own published statistics show that undocumented defendants and defendants charged with immigration offenses are actually *less* likely to flee and *less* likely to violate their release order than the average defendant. For the years 2011-2018, the failure-to-appear rate in the United States for undocumented noncitizens was 0.5%, which is *half* the 1.0% rate for all defendants. *See* U.S. Dep't Of Justice, Bureau of Justice Statistics, *Pretrial Release and Misconduct in Federal District Courts, Fiscal Years 2011-2018*, at 11 tbl. 9 (Mar. 2022).[3] Moreover, among all defendants released on bond, defendants charged with immigration offenses are the *least likely* to violate the terms of their pretrial release: whereas 18.9 percent of all released defendants had at least one pretrial release violation, that was true for only 7.4 of released immigration defendants. *Id.* at 9 tbl.7 In other words, 92.6 percent of all released defendants charged with immigration offenses maintained perfect compliance with the terms of their pretrial release. *See id.*[4]

---

[3] The report is attached as Exhibit A and is also available at https://perma.cc/6ZMK-QTQK (last accessed Mar. 5, 2025).

[4] The findings in the 2022 report, which contains the latest available data, are consistent with an earlier version. Moreover, the U.S. Department of Justice's own data. U.S. Dept. of Justice, Bureau of Justice Statistics, *Pretrial Release and Misconduct in Federal District Courts, 2008–2010*, at 15 (Nov. 2012) (showing that 93 percent of immigration defendants maintained perfect pretrial compliance and only 1 percent failed to appear), *available at* https://bjs.ojp.gov/content/pub/pdf/prmfdc0810.pdf (last accessed Mar. 6, 2025).

1   Thus, "[a]ny idea that immigrant defendants are more likely to flee than non-

2   immigrant defendants is simply not supported by any concrete data." *United States v.*

3   *Pavon-Andino*, Criminal Case No. 25-mj-00022-TPO, 2025 WL 446143, at *3 (D.

4   Colo. Feb. 10, 2025).

5           **b.      An illegal reentry defendant is not likely to face a long**

6                     **sentence**

7   The government may cite the statutory maximum sentence under 8 U.S.C.

8   § 1326(b)(2) as proof of flight risk. But, in reality, the average sentence imposed upon

9   illegal reentry defendants is quite low.[5] In fiscal year 2023, the average sentence for

10  defendants convicted of illegal reentry under 8 U.S.C. § 1326 was just 12 months. U.S.

11  Sentencing Commission, "Quick Facts: Illegal Reentry Offenses" (July 2024) at 2.[6]

12  Thus, to the extent that sentencing exposure is relevant to a flight risk determination, it

13  does not favor detention in an illegal reentry case.

14          **c.      The alleged weight of the evidence in illegal reentry cases**

15                    **does not favor detention**

16  Under Ninth Circuit precedent, the weight of the evidence against the person is

17  "the least important of the various factors" in weighing a detention request. *Motamedi*,

18  767 F.2d at 1408. Thus, even if it were strong, the weight of the evidence would add

19  little support to the government's detention request. But to the extent that it is entitled

20  to any weight, it would be a mistake to assume that an illegal reentry charge will

21  inevitably result in conviction. Indeed, in recent years numerous illegal reentry

22  defendant in the Central District have prevailed against the government. *See, e.g.*,

23  *United States v. Ramirez*, CR 21-45-JLS, Dkt. 200 (C.D. Cal. Jan. 19, 2025) (vacating

24  illegal reentry conviction under Rule 29 and dismissing indictment); *United States v.*

25

26

27          [5] When the enhancements under § 1326(b) do not apply, the statutory maximum
    sentence is only two years. 8 U.S.C. 1326(a).

28          [6] Available at https://www.ussc.gov/sites/default/files/pdf/research-and-
    publications/quick-facts/Illegal_Reentry_FY23.pdf (last accessed March 5, 2025).

7

*Flores-Basurto*, CR 21-530-RGK, Dkt. 81 (C.D. Cal. Apr. 20, 2022) (jury verdict of not guilty); *United States v. Hernandez*, CR 17-744-CAS, Dkt. 77 (C.D. Cal. Nov. 27, 2023) (granting government motion to dismiss indictment).

Further, courts should accord less weight to this factor when the government proceeds by complaint, as it normally does in illegal reentry cases. In indicted cases, the government can credibly state that a grand jury has reviewed the evidence and found it sufficient to support the charge. In contrast, a complaint is based only upon the claims of an affiant who has not been subjected to cross-examination. *See United States v. Salkicevic,* 2015 WL 525556, at *3 (N.D. Ill. Feb. 10, 2015) ("[T]he weight of the evidence [in an indicted case] is a good deal more compelling than in a case involving only a criminal complaint."). Thus, the weight of the evidence is necessarily diminished in cases that have not proceeded to indictment.

## 2.    Purported risk of danger is not a valid basis for detention here

In addition to its misguided risk-of-flight arguments, the government also often seeks to detain illegal reentry defendants upon alleged danger to the community. But that argument misreads the Bail Reform Act. The Ninth Circuit has squarely held that, in cases involving offenses like illegal reentry that are not named in 18 U.S.C. § 3142(f)(1), "danger to the community" may not form the basis of a detention order; rather, it should be considered only in crafting appropriate conditions of release:

> We are not persuaded that the Bail Reform Act authorizes pretrial detention without bail solely on a finding of dangerousness. This interpretation of the Act would render meaningless 18 U.S.C. § 3142(f)(1) and (2). Our interpretation is in accord with our sister circuits who have ruled on this issue. See *United States v. Byrd*, 969 F.2d 106 (5th Cir. 1992); *United States v. Ploof*, 851 F.2d 7 (1st Cir. 1988); *United States v. Himler*, 797 F.2d 156 (3d Cir. 1986).

8

1   *United States v. Twine*, 344 F.3d 987, 987 (9th Cir. 2003). *See also, e.g.*,

2   *Himler*, 797 F.2d at 160-162 (3d Cir. 1986) ("We find that the district court

3   improperly considered danger to the community in detaining the defendant

4   pending trial rather than in setting conditions of release."); *United States v.*

5   *Friedman*, 837 F.2d 48, 49 (2d Cir. 1988) ("The Bail Reform Act does not

6   permit detention on the basis of dangerousness in the absence of risk of

7   flight, obstruction of justice, or an indictment for the offenses enumerated

8   [in § 3142(f)(1)].").

9          Although the government may misread *Twine* as limited to the threshold question

10   of whether a *detention hearing* can be based on dangerousness--as opposed to a

11   detention order itself--that reading has been squarely rejected. *United States v.*

12   *Nwabueze*, CR 10-411-MMM, Dkt. 36, at 9-10 (C.D. Cal. June 28, 2010) (explaining

13   that *Twine* specifically held that danger along could not justify "pretrial *detention*

14   *without bail*") (emphasis in *Nwabueze*); *United States v. Schoeplin*, CR 22-121-FMO-

15   MAR, Dkt. 51, at 4 (C.D. Cal. May 19, 2022) (finding *Nwabueze* "particularly

16   persuasive" and concluding "the government's interpretation does not hold water").[7]

17          Accordingly, this Court should not and need not consider danger in evaluating

18   whether to grant the government's motion for detention. Rather, danger to the

19   community is relevant only in considering appropriate conditions of release.

20   **C.    The government is not entitled to temporary detention under 18 U.S.C.**

21          **§ 3142(d) when the prosecution is initiated by immigration authorities**

22          18 U.S.C. § 3142(d) permits a court to temporarily detain a noncitizen for up to a

23   maximum of 10 days to allow the prosecutor to "*notify*…the appropriate official of the

24   Immigration and Naturalization Service." (emphasis added).[8] Legislative history makes

25

26          [7] *Nwabueze* is attached as Exhibit B and *Schoeplin* is attached as Exhibit C.

27          [8] The Homeland Security Act of 2002 abolished the Immigration and
     Naturalization Services and transferred its relevant functions to the Department of
28   Homeland Security. *United States v. Santos-Flores*, 794 F.3d 1088, 1091 n.2 (9th Cir.
     2015).

clear the purpose of this provision is "giv[ing] the government time to contact the appropriate . . . immigration official and to provide the minimal time necessary for such official to take whatever action on the existing conditional release that official deems appropriate." S. Rep. no. 98-225, at 17 (1983). Put simply, § 3142(d) is a "notice provision." *United States v. Soriano Nunez*, 928 F.3d 240, 246 (3d Cir. 2019); *accord United States v. Lett*, 944 F.3d 467, 472 (2d Cir. 2019).

Because the purpose of the detention is to *notify* immigration authorities, courts have held that it does not apply to prosecutions that were initiated by immigration authorities themselves. As Central District Judge Ramirez Almadani recently explained:

> This notice requirement—the essential purpose of § 3142(d)—is rendered meaningless where immigration authorities initially had the non-citizen in their custody, declined to pursue immediate removal, and instead referred the defendant for criminal prosecution.

*United States v. Ruelas-Diaz*, 2:25-MJ-765-DUTY, Dkt. 19, at 7 (C.D. Cal. February 28, 2025)[9]; *accord United States v. Ailon-Ailon*, 875 F.3d 1334, 1338 n.2 (10th Cir. 2017) ("Because Ailon-Ailon was initially arrested by ICE, it does not appear that the notice provision of subsection (d) applies[.]"); *United States v. Figueroa-Alvarez*, 681 F.Supp.3d 1131, 1136 n.3 (D. Idaho 2023) ("Where, as here, immigration authorities bring the defendant to the attention of federal prosecutors, and not the other way around, the temporary detention provisions of § 3142(d) do not apply."); *United States v. Villatoro-Ventura*, 330 F. Supp. 3d 1118, 1135 (N.D. Iowa 2018) (holding that section 3142(d) "does not apply to this case" because "ICE is already aware of Villatoro-Ventura's status as an illegal alien, as it was the entity that conveyed him to Marshal custody.").

---

[9] A copy of Judge Ramirez Almadani's *Ruelas-Diaz* Order is attached as Exhibit D.

1    Thus, where—as here—the defendant was arrested by immigration authorities,

2    detention under 3142(d) is simply an "impermissibl[e] attempt[] to interfere with

3    defendant's right to pretrial release under the Bail Reform Act." *Ruelas-Diaz*, 2:25-MJ-

4    765-DUTY, Dkt. 19, at 8. The Court should therefore deny the government's request

5    for detention under that provision.[10]

6    **D.      This Court should not stay any release order**

7         Finally, this Court should reject the government's inevitable request to stay a

8    release order. For one, nothing in the BRA authorizes or even contemplates staying a

9    release order. This Court should not read into the BRA a provision that Congress

10   omitted. But even if a stay were authorized, the government's request for a stay

11   requires a magistrate to make the illogical finding that their own determination is likely

12   incorrect. As such, any request to stay a release order should be denied.

13       **1.      The Bail Reform Act does not authorize stays of release orders**

14        In crafting the BRA, Congress could have written a provision permitting the stay

15   of release orders in criminal proceedings. It did not do so. 18 U.S.C. § 3142, which

16   provides the applicable standards for detention hearings and detention orders, contains

17   no mention of a stay. Nor does 18 U.S.C. § 3145, which allows the government to ask a

18   district court for "revocation" of a magistrate judge's release order. That section

19   expressly addresses the timing of a motion to revoke a release order, dictating that such

20   motions "shall be determined promptly." 18 U.S.C. § 3145(a). The statute contains no

21   suggestion that the release order may be stayed pending the adjudication of the

22   revocation request.

23        The government might argue that a judge has an "inherent" authority to stay any

24   order. But when Congress has intended to provide for stays in criminal cases, it has

25   _____

26        [10] If this Court nonetheless rejects this reading and disagrees with Judge Ramirez
     Almadani's reasoned conclusion, it should limit detention under 18 U.S.C. § 3142(d) to
27   a minimal amount of time. The statute says that detention under that provision can last
     "for a period of not more than ten days"; it does not set a minimum period. *Id.* In cases
28   where immigration authorities have already been notified, anything beyond a minimal
     period would be flatly unwarranted.

1   done so explicitly. *See, e.g.*, 18 U.S.C. § 3626(e)(3) ("The court may postpone the
2   effective date of an automatic *stay* specified in subsection (e)(2)(A) for not more than
3   60 days for good cause.) (emphasis added); Fed. R. Crim P. 38 ("The court must *stay* a
4   death sentence if the defendant appeals the conviction or sentence.") (emphasis added).
5   The detailed procedures laid out in the BRA contain no mention of stays—an absence
6   this Court should not ignore.

7       The government may also point to that the provision of 18 U.S.C. § 3142(f) that
8   allows for the detention of the defendant "pending completion of the [detention]
9   hearing." Contrary to the government's suggestion, "pending completion of the
10  hearing" cannot reasonably be stretched to include the appeal of a release order issued
11  at the *conclusion* of the detention hearing. The structure of the statute also refutes this
12  argument. The provision that allows for detention *during* the detention hearing is
13  contained in § 3142(f). That subsection states that the detention hearing must take place
14  at the initial appearance, subject to strictly limited continuances. *Id.* The revocation
15  process, on the other hand, is described in § 3145, a completely separate section than
16  § 3142(f). It is quite hard to believe that when Congress stated in that a defendant could
17  be detained during a detention hearing under § 3142, that it intended to mean that the
18  defendant could also be detained during the § 3145 revocation proceedings.

19      A government's request to stay a detention order is a request to order detention
20  on a basis unauthorized by the BRA. This Court should decline any such request

21      **2.    Even if Congress had authorized stays, they should be incredibly**
22          **rare**

23      Even if Congress had authorized stays of release orders, the government will not
24  be able to make the required showing in all but the most unusual cases. As the Supreme
25  Court has explained, a stay "is an intrusion into the ordinary processes of
26  administration and judicial review, and accordingly is not a matter of right, even if
27  irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S.
28

418, 427 (2009) (cleaned up). A court considering whether to issue a stay must consider:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Mi Familia Vota v. Fontes*, 111 F.4th 976, 981 (9th Cir. 2024) (quoting *Nken*, 556 U.S. at 434). The burden rests entirely on the party seeking the stay, and a court may only issue a stay upon finding each of these requirements satisfied. *Mi Familia Vota*, 111 F.4th at 981. The Ninth Circuit has "sometimes described the relationship between this factor and irreparable injury as a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Manrique v. Kolc*, 65 F.4th 1037, 1041 (9th Cir. 2023). But "[e]ven with a high degree of irreparable injury, the movant must show 'serious legal questions' going to the merits," and "[a] serious question is more than a merely plausible claim." *Id.*

To find a "likelihood" of success on the merits in this context, a magistrate judge would have to find that their own release order was "likely" erroneous. The government cannot make such an internally inconsistent showing. The government's arguments on irreparable harm present a similarly illogical request. While the government may be irreparably harmed by a fugitive defendant, a release order depends on the magistrate judge's conclusion that there are conditions that will reasonably mitigate any such risk. That conclusion—that the defendant is not likely to flee under the terms of the release order—necessarily prevents a finding that the government will likely suffer irreparable harm.

On the other hand, a defendant detained under a stayed release order suffers real harms. The government has sought stays that last until their revocation motion is adjudicated. Particularly in cases initiated by criminal complaint, and thus not yet

1    assigned to a district judge, such an adjudication process could easily take weeks. It

2    would certainly cause irreparable harm to detain a defendant for weeks when the only

3    judicial officer to consider the case has concluded that the BRA requires release. Nor

4    would the public interest be served by thwarting the plain purpose of the statute.

5         Thus, even if Congress had intended for release orders to be stayed—despite

6    never saying so—this Court should hold that the government has not made the required

7    showing.

8                                   **IV. CONCLUSION**

9         For the foregoing reasons, this Court should reject the government's request for

10   detention.

14

EXHIBIT A

**U.S. Department of Justice**
Office of Justice Programs
*Bureau of Justice Statistics*



## SPECIAL REPORT

MARCH 2022

NCJ 252837

# Pretrial Release and Misconduct in Federal District Courts, Fiscal Years 2011–2018

George E. Browne, Ph.D., *BJS Statistician*
Suzanne M. Strong, Ph.D., *former BJS Statistician*

The Probation and Pretrial Services Office of the Administrative Office of the U.S. Courts disposed 747,468 pretrial cases in federal district courts during the 8-year aggregated period of fiscal years (FYs) 2011–18. During that period, nearly 1 in 3 defendants (32%) were released pretrial. Defendants charged with a property offense were most likely to be released prior to the adjudication of their case (73%), while defendants charged with an immigration offense were least likely to be released (12%) (figure 1).

There were 750,688 pretrial cases disposed during FYs 2011–18. Of those, 3,220 were material witness cases, leaving 747,468 pretrial services cases disposed in federal district courts. Material witnesses held by the government were excluded from this analysis. Of the cases for which offense level information was available, 97% were felonies.

**FIGURE 1**
**Percent of defendants released pretrial with cases disposed in federal district courts, by most serious offense, FYs 2011–18**



Note: Most serious offense was missing on 2,926 records, and timing of release decision was missing on 635 records. Details may not sum to total due to missing cases. See table 1 for percentages.
Source: Bureau of Justice Statistics, based on data from the Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services Automated Case Tracking System, fiscal years 2011–18.

## HIGHLIGHTS

During the aggregated period of fiscal years 2011–18—

- Thirty-two percent of defendants whose cases were disposed in federal district courts were released before trial.

- Twenty-two percent of defendants were released at their initial court appearance, while 10% were released at a later hearing, such as a detention or bond hearing.

- Seventy-six percent of defendants released were released without financial conditions, including release on personal recognizance or on an unsecured bond.

- Seventy-nine percent of defendants released pretrial had conditions on their release, such as travel restrictions, substance abuse treatment requirements, weapons restrictions, and employment requirements.

- Forty percent of defendants detained before trial had consented to detention, while 48% had court-ordered detention.

- Nineteen percent of released defendants were charged with at least one violation of their pretrial release conditions.

- Of defendants released pretrial, 17% were charged with a technical violation, 2% were rearrested for a new offense, and 1% failed to appear for a subsequent court hearing.



Findings are based on Probation and Pretrial Services data provided to the Bureau of Justice Statistics' Federal Justice Statistics Program (FJSP). The Probation and Pretrial Services program collects information on the pretrial release of defendants charged in federal district courts, including the type of release or detention and whether defendants were returned to custody for misconduct during their release. Data provided to the FJSP included records for defendants whose cases were disposed by federal district courts from FYs 2011 to 2018. Offense information reflects the most serious offense charged in each case, as determined by a probation officer. (See *Methodology*.)

### Roughly the same percentage of defendants were released before trial each year in FYs 2011 to 2018

The percentage of defendants released before trial remained relatively stable each year in FYs 2011 to 2018, overall and by type of offense (figure 2). During this period, most defendants charged with a property offense were released pretrial (68% to 76% of defendants), followed by persons charged with public order (51% to 62%) and drug (35% to 38%) offenses. Similar shares of defendants charged with violent

(29% to 31%) and weapons (25% to 31%) offenses were released before trial, while persons charged with immigration offenses were least likely to be released (9% to 18%).

### Most defendants released pretrial were released at the initial hearing

During the 8-year aggregated period of FYs 2011–18, about 32% of defendants charged in federal district courts were released before trial (table 1). Twenty-two percent of these defendants were released at their initial appearance in court, while 10% were released at a subsequent hearing. Among defendants charged with a property, public order, or immigration offense, a higher percentage of defendants were released at the initial appearance than at subsequent hearings. Persons charged with a violent or drug-trafficking offense were more likely to be released at a subsequent hearing than at the initial appearance.

### FIGURE 2
**Percent of defendants released pretrial with cases disposed in federal district courts, by most serious offense, FYs 2011–2018**



Percent released

Note: See appendix table 1 for percentages.
Source: Bureau of Justice Statistics, based on data from the Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services Automated Case Tracking System, fiscal years 2011–2018.

### TABLE 1
**Defendants released pretrial with cases disposed in federal district courts, by type of hearing and most serious offense, FYs 2011–18**

| Most serious offense | Number of defendants | Percent released | Percent released at— | |
|---|---|---|---|---|
| | | | Initial appearance | Subsequent hearing* |
| All offenses | 747,468 | 32.3% | 22.1% | 10.1% |
| Violent | 23,707 | 30.5% | 14.4% | 16.1% |
| Property | 100,641 | 72.7% | 62.8% | 9.8% |
| Fraudulent | 82,983 | 72.9 | 62.9 | 10.0 |
| Other | 17,658 | 71.7 | 62.3 | 9.3 |
| Drug | 205,772 | 36.6% | 17.5% | 19.0% |
| Trafficking | 159,261 | 35.3 | 16.2 | 19.1 |
| Possession/ other | 46,511 | 40.8 | 22.2 | 18.5 |
| Public order | 60,068 | 55.7% | 43.3% | 12.3% |
| Regulatory | 9,418 | 67.8 | 51.7 | 16.0 |
| Other | 50,650 | 53.5 | 41.8 | 11.7 |
| Weapons | 56,464 | 27.5% | 13.8% | 13.6% |
| Immigration | 297,890 | 11.9% | 9.5% | 2.4% |

Note: Most serious offense was missing on 2,926 records, and timing of release decision was missing on 635 records. Details may not sum to total due to rounding and missing data.

*Includes detention hearings, bond hearings, and releases that occurred at any time after the initial appearance.

Source: Bureau of Justice Statistics, based on data from the Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services Automated Case Tracking System, fiscal years 2011–18.

Pretrial releases also varied by the defendants' demographic characteristics. A larger portion of females (63%) charged in federal district courts were released before trial than males (28%) during FYs 2011–18 (table 2). Overall, a higher percentage of Native Hawaiian and Other Pacific Islander (70%) and Asian (68%) defendants were released pretrial than American Indian or Alaska Native (48%), black (42%), and white (28%) defendants. About 18% of Hispanic defendants were released, compared to 53% of non-Hispanic defendants. Fifty-three percent of defendants who were U.S. citizens were released pretrial, while 8% of undocumented non-U.S. citizens were released before trial.

## TABLE 2
**Defendants released pretrial with cases disposed in federal district courts, by most serious offense and demographic characteristics, FYs 2011–18**

| Demographic characteristic | Number of defendants | Percent released | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | All offenses | Violent | Property | Drug | Public order | Weapons | Immigration |
| Total | 747,468 | 32.3% | 30.5% | 72.7% | 36.6% | 55.8% | 27.5% | 11.9% |
| **Sex** | | | | | | | | |
| Male | 647,605 | 27.6% | 25.9% | 69.1% | 31.8% | 53.0% | 25.9% | 10.4% |
| Female | 96,955 | 63.2 | 61.1 | 81.4 | 61.3 | 75.5 | 64.6 | 32.6 |
| **Race** | | | | | | | | |
| White | 576,842 | 28.5% | 28.2% | 71.5% | 35.0% | 58.1% | 32.3% | 11.4% |
| Black | 133,798 | 42.5 | 24.1 | 75.3 | 38.0 | 45.0 | 23.0 | 33.0 |
| American Indian/Alaska Native | 12,961 | 48.1 | 40.2 | 72.1 | 56.8 | 40.6 | 31.3 | 54.2 |
| Asian | 10,269 | 68.5 | 45.0 | 77.4 | 60.1 | 75.2 | 33.0 | 61.7 |
| Native Hawaiian/ Other Pacific Islander | 1,230 | 69.6 | 53.6 | 84.3 | 67.4 | 74.5 | 30.9 | 71.1 |
| **Ethnicity** | | | | | | | | |
| Hispanic | 445,635 | 18.3% | 25.3% | 54.8% | 26.0% | 44.2% | 24.2% | 10.9% |
| Non-Hispanic | 286,180 | 53.0 | 30.8 | 79.4 | 47.4 | 58.1 | 28.3 | 46.6 |
| **Citizenship status** | | | | | | | | |
| U.S. citizen | 368,085 | 53.1% | 31.0% | 81.9% | 47.1% | 57.4% | 28.5% | 67.9% |
| Documented non-U.S. citizen | 31,457 | 42.3 | 33.5 | 68.4 | 27.3 | 53.8 | 32.2 | 58.9 |
| Undocumented non-U.S. citizen | 340,179 | 8.4 | 6.8 | 28.8 | 3.3 | 20.0 | 6.0 | 8.0 |

Note: Most serious offense was missing on 2,926 records, sex was missing on 2,908 records, race was missing on 12,368 records, ethnicity was missing on 15,653 records, and citizenship status was missing on 7,747 records. Details may not sum to total due to missing data.
Source: Bureau of Justice Statistics, based on data from the Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services Automated Case Tracking System, fiscal years 2011–18.

# Types of pretrial release, detention, and misconduct

## Types of pretrial release

Defendants may be released without financial conditions by the following methods:

*Personal recognizance*—A pretrial release condition in which the defendant promises to appear at trial and no financial conditions are imposed.

*Unsecured bond*—A pretrial release condition in which the defendant agrees to pay the full bond amount in the event of nonappearance at trial but is not required to post security as a condition of release.

*Conditional release*—Any combination of restrictions that are deemed necessary to guarantee the defendant's appearance at trial or the safety of the community. These conditions commonly place restrictions on the defendant's movements, associations, or actions. They may also involve employment or treatment for medical, psychological, or substance abuse conditions. Pretrial conditions can be attached to defendants released with or without a financial bond.

Defendants may also be released on financial conditions. Financial conditions include the following methods:

*Collateral bond*—An agreement made as a condition of pretrial release that requires the defendant to post money or property valued at the full bond amount as an assurance of his or her intention to appear at trial.

*Percentage bond*—An agreement as a condition of pretrial release that requires the defendant to post a percentage of the total bond amount with the federal court before being released to the community.

*Surety bond*—An agreement as a condition of release that requires a third party, usually a bail bondsperson, to promise to pay the full bail amount in the event that the defendant fails to appear in court.

Nonfinancial conditions can be ordered with any type of bond and can include maintaining employment during the period of pretrial release, travel restrictions, maintaining abstinence from drugs or alcohol, weapons prohibitions, having no contact with any witnesses or victims in the case, or any other nonfinancial conditions imposed by the judicial officer.

## Types of pretrial detention

The Bail Reform Act of 1984 (18 U.S.C. §§ 3141–3150) requires courts to detain persons charged with serious felonies if, after an adversarial detention hearing, the court finds that the defendants pose a danger to themselves or the community and if one of the following crimes is charged:

1. crime of violence
2. offense with a statutory maximum sentence of life imprisonment or death
3. drug offense with a statutory maximum prison sentence of 10 years or more.
4. any felony if such person has been convicted of two or more offenses described above or two or more state or local offenses that would have been offenses described above if a circumstance giving rise to federal jurisdiction had existed, or a combination of such offenses
5. any felony that is not otherwise a crime of violence that involves a minor victim; the possession or use of a firearm, a destructive device, or any other dangerous weapon; or a failure to register.

A defendant on preventive detention is typically detained during the entire period from initial appearance through case adjudication. Other forms of pretrial detention include detention because a defendant could not meet the financial bond set by the court, was unable to meet specified pretrial conditions, or was on consent detention.

## Types of pretrial misconduct

The following types of events are included under pretrial misconduct:

*Technical violation*—Occurs when the defendant fails to comply with pretrial release conditions, including failing a drug test, failing to maintain or seek employment, refusing to maintain contact with a pretrial supervision officer, or violating weapons prohibitions.

*Failure to appear*—Occurs when the defendant misses a scheduled court appearance.

*Rearrest for new offense*—Occurs when the defendant is rearrested for a felony or misdemeanor offense committed while on pretrial release.

### A smaller percentage of defendants with more serious criminal histories were released pretrial

Federal law requires that the judicial officer (i.e., federal district or magistrate judge) consider the defendant's criminal history, including prior arrests, convictions, and court appearances (18 U.S.C. § 3142(g)). The percentage of defendants released pretrial declined as the severity of their criminal histories increased. Forty percent of defendants with no prior arrests were released during FYs 2011–18, compared to 23% of defendants with 11 or more arrests (table 3). This difference was pronounced among defendants charged with a violent offense. Forty-four percent of defendants charged with a violent offense with no prior arrests were released pretrial, compared to 14% of those with 11 or more arrests.

Thirty-nine percent of defendants with no prior convictions were released pretrial, compared to 21% of defendants with 11 or more convictions. The nature of prior convictions affected the percentage of defendants released pretrial. Thirty-four percent of defendants with prior misdemeanor convictions only were released pretrial, while 24% of defendants with at least one felony conviction were released. Twenty percent of defendants convicted of violent felonies and 25% of defendants convicted of drug felonies were released pretrial. Additionally, a defendant's record of missed court appearances affected pretrial release. Thirty-three percent of defendants with no history of missed court appearances were released during FYs 2011–18, while 27% of defendants with two or more missed court appearances were released during the same period.

## TABLE 3
**Defendants released pretrial with cases disposed in federal district courts, by most serious offense and criminal history, FYs 2011–18**

| Criminal history | Number of defendants | Percent released | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | All offenses | Violent | Property | Drug | Public order | Weapons | Immigration |
| Total | 747,468 | 32.3% | 30.5% | 72.7% | 36.6% | 55.8% | 27.5% | 11.9% |
| **Number of prior arrests** | | | | | | | | |
| None | 227,589 | 40.5% | 44.4% | 78.4% | 36.7% | 69.8% | 40.6% | 10.2% |
| 1 | 90,749 | 34.5 | 43.3 | 78.5 | 46.2 | 64.4 | 51.6 | 8.6 |
| 2–4 | 158,469 | 30.4 | 34.1 | 75.2 | 45.0 | 54.3 | 39.5 | 10.9 |
| 5–10 | 142,178 | 27.6 | 23.6 | 65.9 | 36.7 | 37.1 | 28.4 | 14.2 |
| 11 or more | 126,075 | 23.2 | 13.6 | 49.8 | 23.7 | 25.8 | 17.4 | 18.2 |
| **Number of prior convictions** | | | | | | | | |
| None | 314,908 | 39.5% | 42.9% | 77.8% | 39.7% | 68.4% | 41.5% | 9.9% |
| 1 | 114,337 | 29.9 | 36.4 | 75.5 | 44.0 | 55.9 | 40.0 | 9.5 |
| 2–4 | 168,674 | 27.5 | 26.4 | 69.7 | 38.1 | 42.8 | 29.7 | 12.8 |
| 5–10 | 104,629 | 25.0 | 16.0 | 55.2 | 27.5 | 28.8 | 20.9 | 18.0 |
| 11 or more | 42,517 | 21.0 | 11.6 | 44.8 | 19.3 | 23.9 | 14.7 | 21.7 |
| **Nature of prior convictions*** | | | | | | | | |
| Felony | 295,040 | 23.6% | 13.5% | 57.2% | 27.1% | 26.6% | 20.9% | 15.8% |
| Violent | 117,914 | 20.4 | 10.5 | 49.4 | 22.4 | 18.8 | 17.2 | 16.7 |
| Drug | 104,772 | 24.7 | 18.4 | 56.9 | 28.7 | 32.3 | 26.5 | 15.7 |
| Nonviolent | 72,354 | 27.1 | 21.0 | 63.6 | 36.3 | 40.4 | 30.1 | 15.2 |
| Misdemeanor only | 135,117 | 34.2 | 41.6 | 78.3 | 50.7 | 68.6 | 48.5 | 8.0 |
| **Number of prior failures to appear** | | | | | | | | |
| None | 634,553 | 32.8% | 33.7% | 75.1% | 37.6% | 59.3% | 31.0% | 11.8% |
| 1 | 45,782 | 31.8 | 25.6 | 64.8 | 36.4 | 37.7 | 24.9 | 13.6 |
| 2 or more | 64,721 | 27.2 | 17.9 | 54.9 | 29.3 | 34.0 | 18.4 | 12.6 |

Note: Most serious offense was missing on 2,926 records, prior arrests was missing on 2,408 records, prior convictions was missing on 2,403 records, and prior failures to appear was missing on 2,412 records. Details may not sum to total due to missing data.
*Defendants with more than one type of prior conviction (63,236) were each assigned to either the violent, drug, or nonviolent category, in that order.
Source: Bureau of Justice Statistics, based on data from the Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services Automated Case Tracking System, fiscal years 2011–18.

### More than three-quarters of released defendants received nonfinancial release conditions during FYs 2011–18

During FYs 2011–18, almost a quarter (24%) of defendants released pretrial were required to pay a financial bond to secure their release (table 4). All other releases were through nonfinancial means, including unsecured bonds (42%) and personal recognizance (34%). The use of a financial bond varied by offense type and was most commonly used for immigration offenses (72%), followed by drug-trafficking offenses (22%). In comparison, less than 10% of released defendants charged with a violent offense (9%) or a property offense other than fraud (5%) were required to pay a financial bond.

**TABLE 4**
**Defendants released pretrial with cases disposed in federal district courts, by type of release and most serious offense, FYs 2011–18**

| Most serious offense | Number of released defendants | Percent released on— | | | |
|---|---|---|---|---|---|
| | | Personal recognizance | Unsecured bond | Financial bond | Other release* |
| All offenses | 241,164 | 33.8% | 41.9% | 24.1% | 0.1% |
| Violent | 7,228 | 60.6% | 29.9% | 9.3% | 0.2% |
| Property | 73,197 | 35.1% | 51.1% | 13.6% | 0.1% |
| Fraudulent | 60,529 | 31.9 | 52.6 | 15.4 | 0.1 |
| Other | 12,668 | 50.5 | 43.9 | 5.1 | 0.4 |
| Drug | 75,249 | 35.4% | 43.6% | 20.9% | 0.1% |
| Trafficking | 56,281 | 31.9 | 45.9 | 22.2 | 0.1 |
| Possession/other | 18,968 | 46.0 | 36.7 | 17.2 | 0.1 |
| Public order | 33,485 | 45.9% | 41.8% | 12.2% | 0.1% |
| Regulatory | 6,384 | 35.6 | 43.1 | 21.2 | 0.1 ! |
| Other | 27,101 | 48.4 | 41.4 | 10.1 | 0.1 |
| Weapons | 15,516 | 38.2% | 48.4% | 13.4% | 0.1% |
| Immigration | 35,454 | 8.7% | 19.0% | 72.1% | 0.2% |

Note: Most serious offense was missing on 1,035 records. Defendants given more than one type of pretrial release (7,450) were each assigned to either the personal recognizance, unsecured bond, financial bond, or other release category, in that order. Details may not sum to total due to rounding and missing data.
! Interpret with caution. Estimate is based on 10 or fewer cases.
*Includes 331 cases where the defendant was released but the type of release was missing.
Source: Bureau of Justice Statistics, based on data from the Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services Automated Case Tracking System, fiscal years 2011–18.

## Nearly eight in ten released defendants had release conditions during FYs 2011–18

Seventy-nine percent of defendants released pretrial during FYs 2011–18 had conditions on their release (table 5). The share of released defendants receiving special conditions varied by offense type. Almost all released defendants charged with a weapons (95%), drug (90%), or violent (90%) offense were released with conditions. About a third (34%) of released defendants charged with an immigration offense were released with conditions.

The most common conditions of release were travel restrictions (78%), substance abuse testing or treatment (63%), weapons restrictions (51%), and employment requirements (41%).[1] Thirty-four percent of defendants with a conditional release were required to

be on home detention or electronic monitoring, while 28% were ordered to have no contact with the victim.

Substance abuse treatment or testing was the most common release condition among defendants charged with a weapons (85%), drug (84%), or violent (74%) offense. Weapons restrictions were more common among released defendants charged with a weapons (82%), drug-trafficking (65%), or violent (63%) offense than other offenses. Home detention or electronic monitoring were most common for released defendants charged with a weapons (47%) or violent (46%) offense. No contact with the victim was most often required of released defendants charged with a violent offense (52%). Sex offender assessment or treatment was most commonly required of released defendants charged with other public order offenses (5%), such as mailing or transporting obscene material and nonviolent sex offenses.

---

[1]Employment requirements include maintaining employment or actively seeking employment during the pretrial period.

---

### TABLE 5
**Defendants released pretrial with cases disposed in federal district courts, by condition of release and most serious offense, FYs 2011–18**

| Most serious offense | Number of released defendants[a] | Percent with release condition | Percent whose release condition included— | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | Travel restriction | Substance abuse testing/ treatment | Weapons restriction | Employment restriction/ requirement[b] | Home detention/ electronic monitoring | No contact with victim | Sex offender assessment/ treatment |
| **All offenses** | 241,164 | 79.3% | 78.2% | 63.3% | 51.2% | 41.0% | 34.3% | 28.0% | 0.6% |
| **Violent** | 7,228 | 89.6% | 87.8% | 73.5% | 62.6% | 41.6% | 46.3% | 52.1% | 1.3% |
| **Property** | 73,197 | 84.8% | 83.6% | 56.5% | 47.9% | 41.0% | 30.0% | 27.4% | 0.0% ! |
| Fraudulent | 60,529 | 85.8 | 84.6 | 56.0 | 48.6 | 42.5 | 31.2 | 28.7 | 0.0 ! |
| Other | 12,668 | 80.3 | 78.9 | 58.8 | 44.1 | 33.7 | 24.0 | 21.3 | 0.0 ! |
| **Drug** | 75,249 | 90.1% | 89.3% | 83.9% | 62.2% | 50.6% | 42.1% | 33.2% | 0.0% |
| Trafficking | 56,281 | 90.4 | 89.6 | 84.2 | 64.6 | 52.1 | 43.2 | 34.4 | 0.0 |
| Possession/ other | 18,968 | 89.3 | 88.3 | 83.2 | 55.1 | 46.2 | 38.7 | 29.4 | 0.0 ! |
| **Public order** | 33,485 | 81.7% | 80.3% | 56.8% | 48.0% | 34.1% | 38.6% | 28.0% | 4.2% |
| Regulatory | 6,384 | 80.9 | 78.3 | 55.3 | 44.4 | 32.9 | 31.9 | 22.4 | 0.1 ! |
| Other | 27,101 | 81.9 | 80.8 | 57.2 | 48.8 | 34.3 | 40.1 | 29.3 | 5.2 |
| **Weapons** | 15,516 | 94.5% | 93.4% | 84.7% | 82.1% | 53.0% | 47.4% | 30.5% | 0.1% ! |
| **Immigration** | 35,454 | 33.7% | 32.9% | 28.3% | 21.6% | 21.9% | 14.2% | 12.0% | 0.0% ! |

Note: Most serious offense was missing on 1,035 records. Details may not sum to total due to missing data or because defendants could have more than one condition for release.
! Interpret with caution. Estimate is based on 10 or fewer cases.
[a]Includes defendants who were never detained or were detained for part of the pretrial period.
[b]Includes restrictions on employment and requirements to seek or maintain employment.
Source: Bureau of Justice Statistics, based on data from the Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services Automated Case Tracking System, fiscal years 2011–18.

### Nearly half of detained defendants were detained on a court order

Forty-eight percent of defendants who were not released during FYs 2011–18 were detained by court order (table 6). Less than 1% (0.4%) were detained because they could not meet the monetary bond set by the court. Forty percent of detained defendants consented to detention.

The type of detention varied by offense. Detained defendants charged with a drug (66%), regulatory public order (66%), weapons (60%), or violent (59%) offense had the highest rates of court-ordered detention. Consent to detention was highest among defendants facing an immigration charge (54%). The share of defendants detained for other reasons ranged from 11% to 16% across all offense types.

### TABLE 6
**Defendants detained pretrial with cases disposed in federal district courts, by type of detention and most serious offense, FYs 2011–18**

| Most serious offense | Number of detained defendants[a] | Percent detained on— | | | |
|---|---|---|---|---|---|
| | | Court order | Financial bond[b] | Consent[c] | Other[d] |
| All offenses | 488,821 | 47.6% | 0.4% | 39.9% | 12.1% |
| Violent | 16,061 | 59.4% | 0.1% | 27.7% | 12.8% |
| Property | 24,095 | 56.0% | 0.8% | 28.2% | 15.0% |
| Fraudulent | 20,555 | 55.9 | 0.9 | 28.3 | 14.9 |
| Other | 3,540 | 56.6 | 0.2 ! | 27.4 | 15.8 |
| Drug | 129,176 | 66.2% | 0.2% | 22.1% | 11.5% |
| Trafficking | 102,218 | 65.5 | 0.2 | 23.4 | 10.9 |
| Possession/other | 26,958 | 68.9 | 0.1 | 17.5 | 13.5 |
| Public order | 25,000 | 56.3% | 0.2% | 29.3% | 14.2% |
| Regulatory | 2,755 | 65.9 | 0.3 ! | 20.2 | 13.6 |
| Other | 22,245 | 55.1 | 0.2 | 30.4 | 14.3 |
| Weapons | 40,373 | 60.2% | 0.1% | 28.7% | 11.0% |
| Immigration | 252,478 | 33.6% | 0.5% | 53.9% | 12.0% |

Note: Most serious offense was missing on 1,638 records, and 17,483 cases did not indicate a release or detention hearing order.
! Interpret with caution. Estimate is based on 10 or fewer cases.
[a]Includes defendants who were detained for the entire pretrial period.
[b]Includes defendants for whom a financial bond was set but not posted.
[c]Includes defendants who agreed to remain detained for the duration of the case.
[d]Includes defendants on temporary pretrial detention and defendants detained because they were unable to meet certain nonfinancial conditions set by the court.
Source: Bureau of Justice Statistics, based on data from the Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services Automated Case Tracking System, fiscal years 2011–18.

### About a fifth of released defendants engaged in pretrial misconduct during FYs 2011–18

Nineteen percent of defendants released pretrial committed at least one violation of their pretrial release during FYs 2011–18 (table 7). Defendants charged with a weapons (35%), drug (28%), or violent (27%) offense were most likely to engage in such pretrial misconduct, compared to those charged with an immigration offense (7%).

The most common form of pretrial misconduct was a technical violation (17% of released defendants), such as a failed drug test, failure to maintain employment, or any other violation of conditional release. Technical violations were most common among defendants charged with a weapons offense (32%), followed by

those charged with a drug (26%) or violent (25%) offense. Failing to appear in court (1%) and being rearrested for a new offense (2%) were the least common release violations. Failure to appear was most common among defendants charged with a weapons (1%) or drug (2%) offense. Rearrest for a new felony or misdemeanor was highest among released defendants charged with a weapons (5%) or drug (3%) offense and lowest for those charged with a public order (1%) or immigration (1%) offense.

Of defendants released pretrial, 11% had their release revoked. Defendants charged with a weapons (22%), violent (17%), or drug-trafficking (16%) offense had the highest revocation rates, while defendants charged with an immigration offense (5%) had the lowest.

---

#### TABLE 7
**Defendants released pretrial with cases disposed in federal district courts, by type of release violation and most serious offense, FYs 2011–18**

| Most serious offense | Number of released defendants | Percent who had— | | | | |
|---|---|---|---|---|---|---|
| | | At least one release violation | Failure to appear | Technical violation[a] | Rearrest for new offense[b] | Release revoked |
| All offenses | 241,164 | 18.9% | 1.0% | 17.2% | 2.1% | 10.5% |
| Violent | 7,228 | 26.9% | 1.1% | 25.0% | 2.3% | 17.1% |
| Property | 73,197 | 13.8% | 0.9% | 12.1% | 1.8% | 6.9% |
| Fraudulent | 60,529 | 13.3 | 0.8 | 11.7 | 1.9 | 6.6 |
| Other | 12,668 | 16.0 | 1.0 | 14.3 | 1.6 | 8.4 |
| Drug | 75,249 | 27.9% | 1.5% | 25.8% | 3.0% | 15.7% |
| Trafficking | 56,281 | 28.6 | 1.5 | 26.3 | 3.2 | 16.4 |
| Possession/ other | 18,968 | 25.9 | 1.5 | 24.0 | 2.4 | 13.8 |
| Public order | 33,485 | 12.7% | 0.7% | 11.6% | 1.1% | 6.3% |
| Regulatory | 6,384 | 10.4 | 0.8 | 9.4 | 1.0 | 5.3 |
| Other | 27,101 | 13.3 | 0.7 | 12.2 | 1.1 | 6.5 |
| Weapons | 15,516 | 35.2% | 1.2% | 32.3% | 4.7% | 21.5% |
| Immigration | 35,454 | 7.4% | 0.6% | 6.8% | 0.6% | 4.8% |

Note: Most serious offense was missing on 1,035 records. Details may not sum to total due to missing data and because defendants could have more than one type of release violation. Not all violations resulted in revocation of pretrial release.
[a]Includes a failed drug test, failure to maintain employment, and any other violation of conditional release.
[b]Includes felony and misdemeanor offenses.
Source: Bureau of Justice Statistics, based on data from the Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services Automated Case Tracking System, fiscal years 2011–18.

### Criminal histories were associated with pretrial misconduct during FYs 2011–18

Thirty-two percent of defendants with 11 or more prior arrests engaged in technical violations of their pretrial release, compared to 12% of those with no prior arrests **(table 8)**. A similar pattern held between defendants' prior convictions and technical violations of release.

About a quarter (24%) of released defendants with prior misdemeanor convictions only or with prior felony convictions engaged in pretrial misconduct. Misconduct was more frequent among defendants previously convicted of violent (27%) or drug (26%)

felonies than other nonviolent (18%) felonies. Misconduct was also more common among defendants with a history of failing to appear in court. Sixteen percent of released defendants with no prior failures to appear committed at least one violation of their release, compared to 31% of those with one and 39% of those with two or more prior failures to appear.

Revocation of release was most common among released defendants who had extensive criminal histories. Twice the share of defendants with 11 or more prior convictions (22%) or two or more prior failures to appear (23%) had their release revoked as all released defendants did (11%).

### TABLE 8
**Defendants released pretrial with cases disposed in federal district courts, by type of release violation and criminal history, FYs 2011–18**

| Criminal history | Number of released defendants | At least one release violation | Failure to appear | Technical violation[a] | Rearrest for new offense[b] | Release revoked |
|---|---|---|---|---|---|---|
| | | | | Percent who had— | | |
| Total | 241,164 | 18.9% | 1.0% | 17.2% | 2.1% | 10.5% |
| **Number of prior arrests** | | | | | | |
| None | 92,140 | 11.8% | 0.8% | 10.8% | 1.0% | 6.0% |
| 1 | 31,280 | 16.5 | 1.0 | 15.1 | 1.7 | 8.5 |
| 2–4 | 48,172 | 20.9 | 1.1 | 19.1 | 2.4 | 11.5 |
| 5–10 | 39,196 | 25.3 | 1.1 | 23.1 | 3.3 | 14.6 |
| 11 or more | 29,198 | 31.6 | 1.3 | 29.0 | 3.9 | 19.8 |
| **Number of prior convictions** | | | | | | |
| None | 124,293 | 14.0% | 0.9% | 12.7% | 1.3% | 7.3% |
| 1 | 34,187 | 19.6 | 1.1 | 18.0 | 2.2 | 10.5 |
| 2–4 | 46,430 | 23.8 | 1.2 | 21.7 | 3.0 | 13.5 |
| 5–10 | 26,158 | 27.7 | 1.1 | 25.2 | 3.6 | 16.8 |
| 11 or more | 8,918 | 33.1 | 1.6 | 30.1 | 4.1 | 21.8 |
| **Nature of prior convictions[c]** | | | | | | |
| Felony | 69,549 | 24.1% | 1.2% | 21.9% | 3.1% | 14.3% |
| Violent | 24,030 | 27.5 | 1.3 | 25.1 | 3.9 | 16.5 |
| Drug | 25,881 | 25.5 | 1.1 | 23.4 | 3.1 | 15.1 |
| Nonviolent | 19,638 | 17.9 | 1.0 | 16.1 | 2.2 | 10.5 |
| Misdemeanor only | 46,144 | 24.3 | 1.2 | 22.3 | 2.8 | 13.5 |
| **Number of prior failures to appear** | | | | | | |
| None | 207,864 | 16.4% | 0.9% | 14.9% | 1.8% | 8.9% |
| 1 | 14,537 | 30.6 | 1.6 | 27.9 | 3.7 | 17.6 |
| 2 or more | 17,585 | 38.6 | 1.8 | 35.7 | 4.4 | 23.1 |

Note: Prior arrests was missing on 1,178 records, prior convictions was missing on 1,178 records, and prior failures to appear was missing on 1,178 records. Details may not sum to total due to missing data and because defendants could have more than one type of release violation. Not all violations resulted in revocation of pretrial release.
[a]Includes a failed drug test, failure to maintain employment, and any other violation of conditional release.
[b]Includes felony and misdemeanor offenses.
[c]Defendants with more than one type of prior conviction (11,859) were each assigned to either the violent, drug, or nonviolent category, in that order.
Source: Bureau of Justice Statistics, based on data from the Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services Automated Case Tracking System, fiscal years 2011–18.

### More than 1 in 3 American Indian or Alaska Native defendants had a release violation during FYs 2011–18

Pretrial misconduct varied by the defendants' demographic characteristics. Released defendants who were American Indian or Alaska Native (35%) or black (25%) committed at least one violation of pretrial release more often than defendants who were Native Hawaiian or Other Pacific Islander (21%), white (17%), or Asian (12%) (table 9). Larger shares of non-Hispanic defendants (22%) than Hispanic defendants (14%) engaged in pretrial misconduct. U.S. citizens (22%) engaged in pretrial misconduct more frequently than documented (15%) or undocumented non-U.S. citizens (2%). Roughly 1 in 5 males (19%) and females (18%) committed at least one violation of pretrial release during FYs 2011–18.

### TABLE 9
**Defendants released pretrial with cases disposed in federal district courts, by type of release violation and demographic characteristics, FYs 2011–18**

| Demographic characteristic | Number of released defendants | At least one release violation | Failure to appear | Technical violation[a] | Rearrest for new offense[b] | Release revoked |
|---|---|---|---|---|---|---|
| | | | Percent who had— | | | |
| Total | 241,164 | 18.9% | 1.0% | 17.2% | 2.1% | 10.5% |
| **Sex** | | | | | | |
| Male | 178,471 | 19.2% | 1.1% | 17.4% | 2.3% | 10.7% |
| Female | 61,285 | 18.1 | 0.9 | 16.8 | 1.6 | 10.1 |
| **Race** | | | | | | |
| White | 164,189 | 16.5% | 1.0% | 15.2% | 1.7% | 9.6% |
| Black | 56,805 | 25.4 | 1.1 | 22.7 | 3.5 | 12.8 |
| American Indian/ Alaska Native | 6,230 | 35.2 | 1.4 | 32.9 | 3.2 | 23.9 |
| Asian | 7,030 | 12.3 | 0.8 | 11.2 | 1.2 | 5.0 |
| Native Hawaiian/ Other Pacific Islander | 856 | 21.4 | 0.4 ! | 20.9 | 1.1 ! | 10.3 |
| **Ethnicity** | | | | | | |
| Hispanic | 81,572 | 13.8% | 1.3% | 12.6% | 1.3% | 8.3% |
| Non-Hispanic | 151,737 | 21.7 | 0.9 | 19.8 | 2.6 | 11.8 |
| **Citizenship status** | | | | | | |
| U.S. citizen | 195,609 | 21.8% | 0.9% | 20.0% | 2.5% | 12.1% |
| Documented non-U.S. citizen | 13,295 | 15.3 | 3.4 | 12.6 | 1.6 | 9.0 |
| Undocumented non-U.S. citizen | 28,472 | 2.0 | 0.5 | 1.6 | 0.2 | 1.1 |

Note: Sex was missing on 1,408 records, race was missing on 6,054 records, ethnicity was missing on 7,855 records, and citizenship status was missing on 3,788 records. Details may not sum to total due to missing data and because defendants could have more than one type of release violation. Not all violations resulted in revocation of pretrial release.
! Interpret with caution. Estimate is based on 10 or fewer cases.
[a]Includes a failed drug test, failure to maintain employment, and any other violation of conditional release.
[b]Includes felony and misdemeanor offenses.
Source: Bureau of Justice Statistics, based on data from the Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services Automated Case Tracking System, fiscal years 2011–18.

**23% of defendants released on personal recognizance violated their release**

While 19% of all released defendants committed some form of pretrial misconduct during FYs 2011–18, defendants with a financial bond (10%) did so less often than defendants with an unsecured bond (20%) or release on personal recognizance (23%) (table 10). Sixteen percent of defendants with a collateral bond committed at least one violation of pretrial release, compared to 11% of those released on a percentage bond and 5% of those released on a surety bond.

**TABLE 10**
**Defendants released pretrial with cases disposed in federal district courts, by type of release violation and pretrial release, FYs 2011–18**

| Type of release | Number of released defendants | Percent who had— | | | | |
| | | At least one release violation | Failure to appear | Technical violation[a] | Rearrest for new offense[b] | Release revoked |
|---|---|---|---|---|---|---|
| Total | 241,164 | 18.9% | 1.0% | 17.2% | 2.1% | 10.5% |
| **Financial bond** | 58,209 | 9.9% | 0.8% | 8.7% | 1.4% | 5.6% |
| Collateral bond | 9,463 | 16.5 | 1.4 | 14.4 | 3.2 | 7.4 |
| Percentage bond | 30,444 | 10.7 | 0.8 | 9.5 | 1.4 | 6.5 |
| Security bond | 18,302 | 5.2 | 0.5 | 4.5 | 0.6 | 3.1 |
| **Unsecured bond** | 101,003 | 20.2% | 1.0% | 18.4% | 2.3% | 10.7% |
| **Personal recognizance** | 81,621 | 23.4% | 1.1% | 21.7% | 2.3% | 13.7% |

Note: Type of release was missing on 331 records. Defendants given more than one type of pretrial release (7,450) were each assigned to either the personal recognizance, unsecured bond, or financial bond category, in that order. Details may not sum to total due to missing data and because defendants could have more than one type of release violation. Not all violations resulted in revocation of pretrial release.
[a]Includes a failed drug test, failure to maintain employment, and any other violation of conditional release.
[b]Includes felony and misdemeanor offenses.
Source: Bureau of Justice Statistics, based on data from the Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services Automated Case Tracking System, fiscal years 2011–18.

# Methodology

### Federal Justice Statistics Program

Data used for this report are from the Federal Justice Statistics Program (FJSP), administered by the Bureau of Justice Statistics (BJS). The FJSP is constructed from source files provided by the U.S. Marshals Service, Executive Office for U.S. Attorneys, Administrative Office of the U.S. Courts (AOUSC), U.S. Sentencing Commission, and Federal Bureau of Prisons. The AOUSC provides data describing defendants processed by the federal judiciary, federal pretrial services agencies, and the federal probation and supervision service. For more information about the FJSP, visit https://bjs.ojp.gov/data-collection/federal-justice-statistics-program-fjsp.

### Office of Probation and Pretrial Services Automated Case Tracking System

All tables in this report are based on data from the AOUSC's Office of Probation and Pretrial Services Automated Case Tracking System (PACTS) that were processed for the FJSP. These data contain information on defendants interviewed, investigated, or supervised by federal pretrial services. The information covers defendants' pretrial hearings, detentions, and releases from the time they are interviewed through the disposition of their case in federal district court. These data describe defendants processed by federal pretrial service agencies within 93 of the 94 federal judicial districts. Defendants who received pretrial services through a local, nonfederal agency were excluded from analysis. Because the District of Columbia operates a pretrial services agency independent of the AOUSC, defendants prosecuted in the U.S. District Court for the District of Columbia who were processed by the D.C. pretrial services agency were also excluded.

Data were examined for 747,468 defendants who were under the jurisdiction of federal pretrial services from October 1, 2010 through September 30, 2018 (i.e., fiscal years 2011–2018) and whose case was filed by complaint, indictment, or information. Information on offense level was available for 745,407 cases, of which 719,959 (97%) were felonies. Data from fiscal years 2011 to 2018 were pooled for most of the analyses. Analysis of each year individually demonstrated stability in pretrial release rates, both overall and by offense category (see Figure 2). Pooling years of data permitted more detailed analysis of the impact of type of offense, demographic characteristics, and criminal history on pretrial release, type of release, conditions of release, and release violations.

Federal pretrial service agencies have jurisdiction over both released and detained defendants from the time of their arrest to the disposition of their case in federal district court through a guilty plea, trial conviction, dismissal, or acquittal.

Offenses in PACTS are based on the most serious offense charged in a case, as determined by the probation officer responsible for interviewing the defendant. The probation officer classifies the most serious offense charged into an AOUSC four-digit offense code. For defendants charged with more than one offense on an indictment, probation officers choose the offense carrying the most severe penalty or, in the case of two or more charges carrying the same penalty, the one with the highest offense severity. The offense severity level is determined by the AOUSC, which ranks offenses according to the maximum sentence, type of crime, and maximum fine amount. These four-digit codes are then aggregated into the primary offense charges used for this report.

### Data limitations

In these tables, totals include defendants whose offense or other attributes were missing or unknown, while percentages exclude defendants with missing data. The number of records with missing data are reported in the table notes. Cases with missing data include cases in which interviews were refused or the defendants were not available for the interview.

### Defining pretrial release in PACTS data

Defendants are identified as released pretrial if they were released at any time between their initial appearance in court and the adjudication of their case. Defendants can receive pretrial release at their initial appearance or be detained for additional hearings. Defendants can also be released during subsequent detention, bond, or other hearings or be held for the duration of their case. Percentages of defendants on pretrial release include those released at the initial appearance or after a period of detention.

Types of pretrial release and detention in the report are mutually exclusive. However, defendants can receive multiple types of pretrial release and detention. For example, a defendant can be released on their own recognizance at their initial appearance, return to court on a technical violation, be rereleased with a financial bond, then be detained for a felony offense while on release. PACTS data cover only the initial release. In addition, pretrial release conditions, such as drug monitoring or treatment, are counted separately from the release types because federal district courts typically attach such conditions regardless of how a defendant was released.

## Key terms

**Defendant (unit of analysis)**—A combination of a person and case in the FJSP. For example, if the same person is involved in three different criminal cases during the period specified in this report, then these cases are counted as three defendants or three cases disposed. Similarly, a single criminal case involving four defendants is counted as four cases disposed.

**Failure to appear**—Willful absence from any court appointment.

**Federal court disposition**—The termination of a case proceeding through a guilty plea or trial conviction, dismissal, or acquittal. The defendant in a disposed case is no longer under federal pretrial supervision.

**Felony**—A serious crime that involves a potential punishment of 1 year or more in prison or a crime punishable by death. According to 18 U.S.C. § 3559, felonies are classified based on the maximum imprisonment term authorized by the law describing the offense. The five felony classes—A, B, C, D, and E—include life imprisonment or the maximum penalty of death (Class A felony), 25 years or more (Class B felony), less than 25 years but more than 10 years (Class C felony), less than 10 years but more than 5 years (Class D felony), and less than 5 years but more than 1 year (Class E felony).

**Initial appearance**—The first time a defendant charged with a federal offense appears before a federal judicial officer, typically a magistrate judge. At the initial appearance stage, the defendant can be released pretrial or detained for additional hearings. Defendants can also be released at subsequent detention, bond, or other hearings or be held for the duration of their case.

**Misdemeanor**—A criminal offense punishable by a jail term not to exceed 1 year and any offense specifically defined as a misdemeanor by the AOUSC for the purposes of data collection. According to 18 U.S.C. § 3559, misdemeanors are classified by three letter grades—A, B, and C—based on the maximum terms of imprisonment. Class A denotes an imprisonment term of 1 year or less but more than 6 months, Class B denotes an imprisonment term of 6 months or less but more than 30 days, and Class C denotes an imprisonment term of 30 days or less but more than 5 days. Misdemeanors include offenses previously called minor offenses that were reclassified under the Federal Magistrate Act of 1979.

**Pretrial misconduct**—Instances in which a released defendant violated their pretrial release conditions, typically due to a technical violation of release conditions or a new arrest.

**Pretrial release**—A defendant's release from custody to the community, for all or part of the time before trial or during prosecution, on their promise to appear in court when required. The defendant may be released on personal recognizance, unsecured bond, or financial conditions. Pretrial release includes defendants released within 2 days after arrest and defendants released after posting bail or having release conditions changed at a subsequent hearing.

**Pretrial revocation**—The decision to detain a defendant for violating conditions of pretrial release or for committing a new crime while in a pretrial release status.

### Definitions of major offense categories

**Violent**—Includes murder, nonnegligent or negligent manslaughter, aggravated or simple assault, robbery, rape or sexual assault, kidnapping, and threats against the President.

**Property**—Includes fraudulent and other types of property offenses.

> **Fraudulent property**—Includes embezzlement, fraud, forgery, and counterfeiting.
>
> **Other property**—Includes burglary, larceny, motor vehicle theft, arson, transportation of stolen property, destruction of property, trespassing, and other property offenses.

**Drug**—Includes offenses prohibiting the manufacture, import, export, distribution, or dispensing of a controlled substance (or counterfeit substance), or the possession of a controlled substance (or counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

**Drug trafficking**—Includes manufacturing, distributing, dispensing, selling, or possessing with the intent to manufacture, distribute, or sell a controlled substance or a counterfeit substance.

**Drug possession and other**—Includes offenses involving the possession of a controlled substance, acquiring a controlled substance by misrepresentation or fraud, attempting or conspiring to possess, or simple possession of a controlled substance.

**Public order**—Includes regulatory and other types of offenses.

**Regulatory public order**—Includes violation of agricultural, antitrust, labor, food and drug, and motor carrier regulatory laws and regulations, as well as other regulatory offenses.

**Other public order**—Includes nonregulatory offenses concerning tax law violations (tax fraud), bribery, perjury, national defense, escape, racketeering and extortion, gambling, liquor, mailing or transporting obscene materials, traffic, migratory birds, conspiracy, aiding and abetting, and jurisdiction, as well as other public order offenses.

**Weapons**—Includes violations of any provision of 18 U.S.C. §§ 922–923 concerning the manufacturing, importing, possessing, receiving, and licensing of firearms and ammunition.

**Immigration**—Includes offenses involving illegally entering the United States, illegally reentering after being deported, willfully failing to deport when so ordered, or bringing in or harboring any non-U.S. citizens not duly admitted by an immigration officer.

## APPENDIX TABLE 1
**Percentages for figure 2: Percent of defendants released pretrial with cases disposed in federal district courts, by most serious offense, FYs 2011–2018**

| Most serious offense | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|---|---|---|
| All offenses | 35.5% | 33.2% | 32.0% | 31.1% | 31.8% | 32.5% | 32.3% | 29.1% |
| Violent | 30.4 | 31.4 | 30.6 | 31.1 | 28.5 | 31.0 | 30.7 | 30.1 |
| Property | 68.5 | 73.5 | 72.8 | 73.5 | 74.9 | 75.5 | 73.7 | 70.2 |
| Drug | 37.7 | 36.6 | 36.4 | 36.5 | 35.4 | 35.1 | 36.8 | 38.0 |
| Public order | 61.7 | 58.4 | 56.7 | 56.1 | 54.9 | 53.5 | 52.2 | 51.4 |
| Weapons | 30.2 | 30.6 | 28.3 | 28.2 | 26.5 | 25.5 | 25.6 | 24.9 |
| Immigration | 17.7 | 11.9 | 11.0 | 9.4 | 10.7 | 13.0 | 12.3 | 9.0 |

Source: Bureau of Justice Statistics, based on data from the Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services Automated Case Tracking System, fiscal years 2011–2018.



The Bureau of Justice Statistics of the U.S. Department of Justice is the principal federal agency responsible for measuring crime, criminal victimization, criminal offenders, victims of crime, correlates of crime, and the operation of criminal and civil justice systems at the federal, state, tribal, and local levels. BJS collects, analyzes, and disseminates reliable statistics on crime and justice systems in the United States, supports improvements to state and local criminal justice information systems, and participates with national and international organizations to develop and recommend national standards for justice statistics. Doris J. James is the acting director.

This report was written by George E. Browne and Suzanne M. Strong. Ashlyn Oglesby-Neal and William Adams of The Urban Institute provided support. Mark Motivans verified the report.

David Fialkoff edited the report. Carrie Epps-Carey produced the report.

March 2022, NCJ 252837



NCJ 252837

**Office of Justice Programs**
**Building Solutions • Supporting Communities • Advancing Justice**
**www.ojp.gov**

# EXHIBIT B

E-Filed: 06.28.10

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. CR 10-00411 MMM |
| Plaintiff, | ) | |
| vs. | ) | ORDER GRANTING DEFENDANT'S |
| | ) | APPLICATION FOR REVIEW OF |
| SAMUEL NWABUEZE, | ) | MAGISTRATE JUDGE'S DETENTION |
| Defendant. | ) | ORDER |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

Defendant Samuel Ifeanyi Nwabueze is charged with one count of conspiracy to use counterfeit access devices in violation of 18 U.S.C. § 1029(b)(2) and one count of fraudulent activity in connection with an unauthorized access device in violation of § 1029(a)(2).[1]

On April 12, 2010, Judge Frederick Mumm denied bond and ordered Nwabueze detained.[2]

_____

[1]Indictment, Docket No. 10 (Apr. 23, 2010).

[2]Order of Detention, Docket No. 6 (Apr. 12, 2010).

1   On June 7, 2010, Nwabueze filed a motion for review of Judge Mumm's detention order.[3]  The
2   government opposed the motion on June 10, 2010.[4]

## I.  FACTUAL BACKGROUND

5        The indictment alleges that Nwabueze and Chike Jefe Ngezelonye requested that financial
6   institutions, including American Express Travel Related Service Inc ("AmEx"), Discover
7   Financial Service ("Discover"), and Charles Schwab & Co. ("Schwab"), send unauthorized access
8   devices for victims holding credit card and other accounts at those institutions.[5]  Nwabueze and
9   Ngezelonye allegedly used the unauthorized access devices to make purchases and withdraw cash.[6]
10  The indictment charges that between September 18, 2008 and January 24, 2010, defendants
11  received and/or used twelve credit cards in connection with the scheme.[7]

12       On March 18, 2010, the government filed a criminal complaint.[8]  The complaint described
13  an account takeover ("ATO") identity theft credit card scheme pursuant to which defendants took
14  over preexisting accounts, and then instructed the bank to issue a replacement card and personal
15  identification number ("PIN"), and to mail the card and PIN to an address controlled by
16  defendants rather than the true cardholder's address.[9]  The complaint alleged that the credit cards

---

18       [3]Application to the Criminal Duty Judge for Review of Magistrate Judge's Bail Order,
19  Docket No. 29 (June 7, 2010); Memorandum of Points and Authorities re: Legal Standard for
    Detention Under 18 U.S.C. § 3142 ("Motion"), Docket No. 30 (June 9, 2010).  See also Reply
20  to Government's Response to Defendant's Application for Review Magistrate Judge's Bail Order
    ("Reply"), Docket No. 33 (June 16, 2010).
21

22       [4]Government's Response to Defendant's Application for Review Magistrate Judge's Bail
    Order ("Opp."), Docket No. 31 (June 10, 2010).
23

24       [5]Indictment, ¶ 1.

25       [6]*Id.*, ¶ 2.

26       [7]*Id.*

27       [8]Complaint, Docket No. 1 (Mar. 18, 2010).

28       [9]*Id.*, ¶ 6.

2

1   were then used to make purchases or transfer funds to other accounts.[10]  It also alleged a

2   fraudulent application ("FRAPP") scheme, pursuant to which defendants applied for and opened

3   fraudulent credit card accounts, using the identity of another individual without that individual's

4   knowledge or consent.[11]

5         Nwabueze appeared before Judge Frederick Mumm on April 12, 2010.  In evaluating

6   whether it was appropriate to release Nwabueze on bond, Judge Mumm reviewed the report of

7   the Pretrial Services Department.  Although initially in dispute, it was eventually determined that

8   defendant is a U.S. citizen who was born in Houston, Texas, but who lived in Nigeria from the

9   time he was one year old until he was fifteen.[12]  At age fifteen, defendant moved to this judicial

10   district, living in North Hollywood, Sherman Oaks, and Canoga Park.  Defendant currently

11   resides in Tarzana, California.  Defendant reported that he has lived in the Central District for ten

12   years.

13         Defendant's father and brother live in Tarzana.  Defendant's mother lives in Nigeria.

14   Defendant has one sister, who resides in Miami, Florida, and another sister, who resides in

15   Michigan.  Defendant's brother stated that a third sister lives in Nigeria.

16         Defendant's brother, Henry Nwabueze,[13] is willing to sign an appearance bond without

17   justification in any amount the court deems necessary, as is defendant's girlfriend, Jenna Getchell.

18   Defendant's mother is willing to post a cash deposit of $5,000.  Defendant's father is willing to

19   sign a $100,000 appearance bond without justification.  Defendant earns approximately $4,000

20

21      [10]*Id.*

22      [11]*Id.*, ¶ 7.

23      [12]At the court's order, the defendant's father has provided to te court a copy of the
24   defendant's Texas birth certificate. (Declaration of Samuel Nwabueze, Sr. ("Nwabueze Decl."),
     Docket No. 35 (June 25, 2010), Exh. 1).)
25

26      [13]Following the hearing on June 21, 2010, defendant's father clarified that defendant has
     only one brother whose name is Henry and whose nickname is Zubby. Defense counsel, pretrial
27   services, and the court had been under the impression that defendant had two brothers.
     Defendant's father states in his declaration that he would have raised this matter at the hearing,
28   but feared that interrupting would have been impolite. (*Id.*, ¶ 4.)

1   per month running a business he owns; he receives $3,000 per month from his mother.

2       Defendant was convicted in 2004 of refusing to leave a campus, writing a check with

3   insufficient funds, and driving under the influence of alcohol.  In 2005, defendant was convicted

4   of driving under the influence of alcohol, taking a vehicle without the owner's consent, and

5   driving with a suspended license.  In May 2006, defendant was convicted of obtaining money or

6   property by false pretenses and obtaining credit using another's identification, both felonies.  In

7   August 2006, defendant was convicted of showing false identification to a peace officer and

8   disorderly conduct.  In 2007, he was convicted of obtaining money or property by false pretenses

9   and sentenced to 32 months imprisonment.  The following year – 2008 – defendant was convicted

10  of forgery and sentenced to sixteen months imprisonment.  Defendant is presently on parole for

11  the 2007 conviction, with a discharge date of July 12, 2012.

12      The investigating agent advised Pretrial Services that defendant had caused $159,000 in

13  loss to approximately fifty accounts.

14      In its report, Pretrial Services balanced the fact that defendant had willing sureties, some

15  family ties to California, and employment against the fact that he has ties to Nigeria, he previously

16  resided in and has traveled to Nigeria, he has a history of warrants and an immigration detainer,

17  his background is only partially verified, and he is charged with significant offenses.  Pretrial

18  Services concluded that no combination of conditions would reasonably assure defendant's

19  appearance.  it also considered defendant's extensive criminal history, including his convictions

20  for driving under the influence, and concluded that defendant posed a danger to the community.

21      Judge Mumm therefore ordered defendant detained, concluding that there was a serious

22  risk that he would flee, and that no condition or combination of conditions could reasonably assure

23  his appearance and/or the safety of persons and the community.  In his written factual findings,

24  Judge Mumm referenced the Pretrial Services report.

25      On May 21, 2010, defendant sought reconsideration of the detention order, citing the fact

26  that his mother in Nigeria was willing to post $5,000 in cash and his father was willing to sign a

27

28

1   $100,000 affidavit of surety.[14]  At a hearing on May 27, 2010, defense counsel advised Judge

2   Mumm that defendant was born in the United States; he acknowledged "[t]hat [that fact might]

3   well have to be proven to the immigration authorities but [that proof would be required] before

4   they release[d] him. . . ."  As a result, counsel argued, immigration status would not be "a block

5   . . . to . . . bond. . . ."[15]  On May 27, 2010, Judge Mumm declined to reconsider the detention

6   order.  Defense counsel noted that defendant had previously been on bail in state criminal

7   proceedings and had made all of his court appearances; this included the case in which defendant

8   was eventually sentenced to 32 months.[16]  Counsel conceded that defendant had "had some

9   problems with probation violations and parole violations," but asserted that the problems did not

10  involved "failing to report [or] not showing up for court."[17]  As a result, he argued, the parole and

11  probation violations did not suggest a risk of flight, and were best addressed through electronic

12  monitory and strict reporting.

13       The government countered that although defendant told Pretrial Services he had financial

14  resources, he had not offered to post any of his property as bond.  Rather, it argued that

15  defendants' parents  – one of whom resided abroad and one of whom lived part-time in Nigeria

16  – were the only sources of collateral.  Although the government conceded that "the defendant . . .

17  appear[ed] to have been born in the United States," it asserted that he had spent the first fifteen

18  years of his life in a foreign country, and that given his U.S. citizenship, he might well have

19  access to a U.S. passport.  Defense counsel contended that the government overstated defendant's

20  foreign ties, noting that defendant had lived in the United States for ten years, since he was fifteen.

21

22       Judge Mumm stated:

23  _____

24       [14]Application for Review/Reconsideration of Order Setting Conditions of Release/Detention
25  and Request for Hearing ("Reconsideration Motion"), Docket No. 25 (May 21, 2010).

26       [15]Transcript of Hearing, May 27, 2010 ("Transcript"), at 2:20–27.

27       [16]*Id.* at 3:24–26, 4:1.

28       [17]*Id.* at 4:2–10.

1   "I'm going to deny the motion for reconsideration based on my finding that, even
2   though the defendant has a history of showing up for trial, the record shows an
3   inability to comply with conditions.  He was on parole at the time of the alleged
4   violation here and under these circumstances I just find that the bail resources that
5   have been offered are inadequate.    So, I'm denying the motion for
6   reconsideration."[18]

7

8                              **II.  DISCUSSION**

9   **A.    Standard Governing Review of a Magistrate Judge Order Setting Bail**

10  Rule 59(a) of the Federal Rules of Criminal Procedure provides:

11      "A district judge may refer to a magistrate judge for determination any matter that
12      does not dispose of a charge or defense.  The magistrate judge must promptly
13      conduct the required proceedings and, when appropriate, enter on the record an oral
14      or written order stating the determination.  A party may serve and file objections
15      to the order within 10 days after being served with a copy of a written order or after
16      the oral order is made on the record, or at some other time the court sets.  The
17      district judge must consider timely objections and modify or set aside any part of
18      the order that is contrary to law or clearly erroneous.  Failure to object in
19      accordance with this rule waives a party's right to review."

20  The issuance of release and detention orders, as well as the setting or modification of bail, are
21  matters referred to magistrate judges under Local Rule 46-1.  See CA CD CR L.R. 46-1 ("Except
22  as set forth in these rules, any Magistrate Judge has the authority to fix or modify bail . . . , and
23  conduct detention hearings and issue release and detention orders . . . , including with respect to
24  bail or detention recommended or set in another district in a case arising in this or another
25  district").  See *United States v. Tooze*, 236 F.R.D.442, 444 (D. Ariz. 2006) (concluding that a
26  local rule promulgated by district judges that assigned pretrial detention hearings to magistrate

27  _____

28      [18]*Id*. at 10:6–15.

                                    6

1  judges was a referral of detention matters within the meaning of Rule 59(a)).

2      In *United States v. Koenig*, 912 F.2d 1190 (9th Cir. 1990), the Ninth Circuit considered

3  the standard a district court should use in reviewing the bail order of a magistrate judge.[19]  It

4  concluded that the "structure of the Bail Reform Act . . . suggest[ed] that the district court's

5  review should be of a more plenary nature than that of a court of appeals.  A magistrate judge can

6  issue a detention order only after a hearing 'held immediately upon the person's first appearance'

7  unless a continuance is sought."  *Id.* at 1192 (quoting 18 U.S.C. § 3142(f)).  "Because of the

8  promptness contemplated by the Act," the Ninth Circuit stated, "'magistrate[ judges] traditionally

9  play a preliminary role in these determinations.'"  *Id.* (quoting *United States v. Hurtado*, 779 F.2d

10  1467, 1481 (11th Cir. 1985)).  In assessing what standard of review should be used, the court

11  found significant the fact that the district court was reviewing a "motion to revoke or amend, not

12  . . . an appeal, and [also] that [the motion was being] made in the court of original jurisdiction."

13  *Id.* (citing 18 U.S.C. § 3145(b) (governing review of a detention order) and *United States v.*

14  *Thibodeaux*, 663 F.2d 520, 522 (5th Cir. 1981) ("Because the district court was the court having

15  original jurisdiction of the felonies charged, the district judge was not exercising an appellate

16  jurisdiction")).

17      The Ninth Circuit also cited decisions from two other circuits with approval.  It quoted the

18  following language from the Fifth Circuit's decision in *Thibodeaux*:

19      "The statutory scheme adopted in [the Bail Reform Act] confers a responsibility on

20      the district court to reconsider the conditions of release fixed by another judicial

21      officer . . . as unfettered as it would be if the district court were considering

22      whether to amend its own action.  It is not constrained to look for abuse of

23      discretion or to defer to the judgment of the prior judicial officer.  These latter

24      considerations [are] pertinent when, under [the Bail Reform Act], the district

25      court's action is called before the court of appeals."  *Koenig*, 912 F.2d at 1191

26      (quoting *Thibodeaux*, 663 F.2d at 522 (omission original)).

27  _____

28      [19]The Ninth Circuit has not revisited the question since.

1    The court also cited the Third Circuit's decision in *United States v. Delker*, 757 F.2d 1390 (3d

2    Cir. 1985). There, a magistrate judge denied the government's motion for pretrial detention and

3    set bail at $250,000. The government filed a motion seeking to have the district judge amend the

4    magistrate judge's order. *Id.* at 1391. The district court reviewed the magistrate judge's order

5    *de novo* and conducted an evidentiary hearing regarding factual issues the magistrate judge had

6    already decided. *Id.* at 1393. The Third Circuit affirmed. See *Koenig*, 912 F.2d at 1192 ("[T]he

7    Third Circuit . . . held it proper for a district court to [hold] an evidentiary hearing, on the same

8    facts that were before the magistrate [judge], in determining whether to revoke or amend [the] .

9    . . release order. . . . A primary reason for the court's decision was that, under the prior statute,

10   *Thibodeaux* and its progeny supported a practice of *de novo* review").

11           Applying *Koenig* to the present case, the court

12           "is not required to start over . . . , and proceed as if [Judge Mumm's] decision and

13           findings did not exist. . . . [Rather,] [i]t should review the evidence before [Judge

14           Mumm] and make its own independent determination whether [his] findings are

15           correct, with no deference. If the performance of that function makes it necessary

16           or desirable for the district judge to hold additional evidentiary hearings, [she] may

17           do so, and [her] power to do so is not limited to occasions when evidence is offered

18           that was not presented to the magistrate [judge]. . . . The point is that the district

19           court is to make its own 'de novo' determination of facts, whether different from

20           or an adoption of the findings of the magistrate [judge]. It also follows . . . that the

21           ultimate determination of the propriety of detention is . . . to be decided without

22           deference to [Judge Mumm's] ultimate conclusion." *Koenig*, 912 F.2d at 1193.

23           **B.    Whether the Court May Consider Danger to the Community**

24           As a threshold matter, the court considers a legal issue raised by the government in its

25   opposition. Judge Mumm recessed the hearing on defendant's application for reconsideration to

26   review *United States v. Twine*, 344 F.3d 987 (9th Cir. 2003) (per curiam), and the cases cited

27   therein. Citing that case, he concluded that the only relevant factor in evaluating whether to detain

28   a defendant was flight risk. The government urges the court to find that this decision was legally

8

1   erroneous and to detain defendant based on danger as well as risk of flight.

2       In *Twine*, the district court detained a defendant without bail on the sole basis that he posed

3   a danger to the community being a felon in possession of a firearm pursuant to 18 U.S.C. §

4   922(g)(1). *Id.* at 987. The Ninth Circuit concluded:

5       "We are not persuaded that the Bail Reform Act authorizes pretrial detention

6       without bail based solely on a finding of dangerousness. This interpretation of the

7       Act would render meaningless 18 U.S.C. § 3142(f)(1) and (2). Our interpretation

8       is in accord with our sister circuits who have ruled on this issue. See *United States*

9       *v. Byrd*, 969 F.2d 106 (5th Cir. 1992); *United States v. Ploof*, 851 F.2d 7 (1st Cir.

10      1988); *United States v. Himler*, 797 F.2d 156 (3d Cir. 1986)." *Twine*, 344 F.3d

11      at 987.

12  The Ninth Circuit concluded that, because the charge of being a felon in possession of a firearm

13  was not a crime of violence, the predicate to evaluating dangerousness under § 3142(f) was not

14  triggered. *Id.* at 987-88.

15      The government's interpretation of § 3142(f) contradicts *Twine*'s clear holding. The

16  government asserts that § 3142(f) concerns the holding of a detention *hearing*, not detention. See

17  18 U.S.C § 3142(f) (when the circumstances set forth in § 3142(f)(1) and (f)(2) are present, "[t]he

18  judicial officer shall hold a hearing to determine whether any condition or combination of

19  conditions set forth in subsection (c) of this section will reasonably assure the appearance of such

20  person as required and the safety of any other person and the community"). Based on its

21  interpretation, the government argues that, although the court cannot conduct a detention *hearing*

22  on the basis of danger to the community unless the circumstances outlined in § 3142(f) are present,

23  it can *detain* notwithstanding the fact that none of those circumstances is present, i.e., the

24  defendant is not charged with one of the delineated federal crimes. In other words, the

25  government asserts that it can request a detention hearing based solely on flight risk, and when

26  the hearing is conducted, argue both flight risk and danger to the community.

27      This interpretation of the statute is belied by the fact that neither *Twine* nor the circuit

28  decisions cited therein used such qualifying language. As noted, the *Twine* court was "not

9

1   persuaded that the Bail Reform Act authorize[d] pretrial *detention* without bail based solely on a

2   finding of dangerousness." *Twine*, 344 F.3d at 987 (emphasis supplied). Because the *Twine*

3   decision is short, occupying only half a page in the Federal Reporter, the court considers relevant

4   the three cases cited by *Twine* as support for its decision. In *Himler*, the Third Circuit held that

5   it was "reasonable to interpret the statute as authorizing detention only upon proof of a likelihood

6   of flight, a threatened obstruction of justice or a danger of recidivism in one or more of the crimes

7   actually specified by the bail statute" in § 3142(f)(1). The court concluded that because the case

8   did "not involve any of the offenses specified in subsection (f)(1) . . . the statute [did] not

9   authorize the detention of the defendant based on danger to the community." *Himler*, 797 F.2d

10   at 160.

11        In *Ploof*, the First Circuit followed the Third Circuit, concluding that:

12        "where detention is based on dangerousness grounds, it can be ordered only in

13        cases involving one of the circumstances set forth in § 3142(f)(1). As the Third

14        Circuit pointed out, the Bail Reform Act created a new type of detention –

15        preventive detention – to be invoked only under certain conditions. Insofar as in

16        the present case there is no longer any contention that any of the subsection (f)(1)

17        conditions were met, pre-trial detention solely on the ground of dangerousness to

18        another person or to the community is not authorized." *Ploof*, 851 F.2d at 11–12.

19   Similarly in *Byrd*, the Fifth Circuit concluded that "[d]etention can be ordered . . . only 'in a case

20   that involves' one of the six circumstances listed in [subsection] (f), and in which the judicial

21   officer finds, after a hearing, that no condition or combination of conditions will reasonably assure

22   the appearance of the person as required and the safety of any other person and the community."

23   *Byrd*, 969 F.2d at 109.

24        The two Ninth Circuit decisions the government cites, both of which predate *Twine*, are

25   not to the contrary. In *United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1984), the government

26   moved for detention based solely on flight risk, not dangerousness. *Id.* at 404. Describing the

27   Bail Reform Act, the court stated that the Act "permit[ted] the pretrial detention of a defendant

28   without bail where it is demonstrated either that there is a risk of flight or no assurance that release

1   is consistent with the safety of another person or the community." *Id.* at 1406.  Elsewhere,

2   however, the court emphasized that it had considered flight risk only; it held that "[b]ecause the

3   Government has failed to establish by a preponderance of the evidence that Motamedi poses a

4   flight risk, the motion for reconsideration [had to] be denied." *Id.* at 1404.  In *United States v.*

5   *Walker*, 808 F.2d 1309 (9th Cir. 1986), defendant had been charged with conspiracy to distribute

6   cocaine, bringing the case within the category of cases delineated in § 3142(f)(1).  See *Walker*,

7   808 F.2d at 1310; 18 U.S.C. § 3142(f)(1)(C) (including drug offenses for which the maximum

8   term of imprisonment is ten years or more).  Consequently,  the government's suggestion that in

9   order to support defendant's position, *Twine* must be interpreted as overruling *Motamedi* and

10   *Walker* is unsupported.

11   Defendant's interpretation of *Twine*, moreover, is supported by the statute's legislative

12   history.  The Senate Report accompanying the Bail Reform Act stated that "the requisite

13   circumstances for invoking a detention hearing in effect serve to limit the types of cases in which

14   detention may be ordered prior to trial," S. REP. NO. 225, 98th Cong., 1st Sess. at 20 (1983),

15   1984 U.S.C.C.A.N. 3182, 3203.  As a consequence, the government's attempt to sever the

16   prerequisites for a detention hearing from the prerequisites for detention is unavailing.  See also

17   *id.* at 21 (noting that "the seriousness of the offenses described in subsection (f)(1)(A) through (C)

18   coupled with the government motion is a sufficient basis for requiring an inquiry into whether

19   detention may be necessary to protect the community from the danger that may be posed by a

20   defendant charged with one of these crimes").

21   The court therefore agrees with Judge Mumm and defendant that *Twine* stands for the

22   proposition that a court may only order pretrial detention under the Bail Reform Act based on the

23   danger a defendant poses to the community if the defendant is charged with a crime described in

24   § 3142(f)(1).[20]

25   _____

26   [20]The government's argument that "Congress cannot have intended that an individual who

27   poses a grave danger to the community – e.g., an individual with an unregistered silencer under
     his bed and hundreds of bodies buried in his back yard, or a massive arsenal of chemical weapons

28   in his basement – cannot be detained so long as he is not a risk of flight – e.g., has lived in the

C.    **Whether Defendant Should Be Detained Due to Flight Risk**

Under the Bail Reform Act, release on conditions is the general rule, not the exception. The Act "requires the release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community." *Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). "On a motion for pretrial detention, the government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk." *Id.* (citing *United States v. Motamedi*, 767 F.2d 1403, 1406-07 (9th Cir. 1985)).

Section 3142(g) of the Bail Reform Act specifies the factors that must be considered in determining whether there are conditions of release that will reasonably assure the appearance of defendant at trial. 18 U.S.C. § 3142(g). These include "(1) the nature and circumstances of the offense charged, including whether the offense [is a crime of violence, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device]; (2) the weight of the evidence against the person; [and] (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (citing *Motamedi*, 767 F.2d at 1407). "Of these factors, the weight of the evidence is the least important,

_____

community all his life and has no criminal history" – is unavailing. (Opp. at 8.) As respects the possibility of "hundreds of bodies," the court may detain for any "offense for which the maximum sentence is life imprisonment or death," 18 U.S.C. § 3142(f)(1)(B). Among these is murder or conspiracy. As respects a "massive arsenal of chemical weapons," possession of chemical weapons is among the crimes that permits pretrial detention. *Id.*, § 3142(f)(1)(A) (permitting detention in a case that involves "an offense listed in section 2332b(g)(5)(B)"); *id.*, § 2332b(g)(5)(B) (listing crimes, including possession of chemical weapons in violation of 18 U.S.C. § 229). As respects an unregistered silencer, criminalized in 26 U.S.C. §§ 5861(d) and 5871, see *United States v. Leniear*, 574 F.3d 668, 670 (9th Cir. 2009), the court agrees, that like the felon in possession of a firearm in *Twine*, a defendant charged with possession of an unregistered silencer could not be detained based on a finding of dangerousness to the community. The government's argument on this score is best addressed to Congress as opposed to the court.

1    and the statute neither requires nor permits a pretrial determination of guilt." *Gebro*, 948 F.2d

2    at 1121. "If after a hearing the court determines that no condition or combination of conditions

3    will reasonably assure the appearance of the person, the court is to order the defendant's

4    detention." *United States v. Townsend*, 897 F.2d 989, 993 (9th Cir. 1990) (citing 18 U.S.C. §

5    3142(e)).

6         The government argues that defendant is a flight risk because he has spent a significant

7    portion of his pre-adult life in Nigeria, because his mother lives in Nigeria and his father lives

8    part-time in Nigeria,[18] because defendant faces a term of imprisonment if he is convicted,[19] and

9    because the bail resources defendant offers are insufficient in that he does not proffer any of his

10   own resources. The government has apparently abandoned the argument it advanced before Judge

11   Mumm that defendant's history of parole violations and/or probation revocations supports a

12   finding that he is a flight risk. Defendant challenged taking this consideration into account, given

13   that it is specifically identified as a relevant factor in § 3142(g)(3).[20]

14        Defendant correctly notes that while the subsection mandates consideration of the fact that

15   defendant is presently on probation or parole, it does not require that the court consider prior

16   _____

17   [18]After defendant's father, who was present at the hearing before Judge Mumm, heard the
18   government assert that he frequently travels to Nigeria, defendant's father telephoned defense
     counsel to inform him that the last time he had been to Nigeria was in 2003. (Reply at 6.)

19   [19]The government does not suggest a particular term of imprisonment based on the
20   Sentencing Guidelines; it argues merely that "any term of incarceration is serious and could serve
     as a potential motivation to avoid prosecution." (Opp. at 10.) Defense counsel asserts, without
21   support, that the advisory guideline range would be 1.5 to 3 years. He emphasizes that defendant
22   has faced similar sentences in state court, has been released on bond, and has not missed court
     appearances. (Reply at 6–7.)
23
24   [20]"The judicial officer shall . . . take into account the available information concerning . . .
     the history and characteristics of the person, including . . . the person's character, physical and
25   mental condition, family ties, employment, financial resources, length of residence in the
     community, community ties, past conduct, history relating to drug or alcohol abuse, criminal
26   history, and record concerning appearance at court proceedings; and . . . whether, at the time of
27   the current offense or arrest, the person was on probation, on parole, or on other release pending
     trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local
28   law." 18 U.S.C. § 3142(g)(3).

1    parole or probation violations. In its opposition, the government does not argue that Judge

2    Mumm's order should be upheld on that basis; rather, it asserts that the court should uphold the

3    decision based on Judge Mumm's observation that defendant is a flight risk and that the bail

4    resources that have been offered are inadequate. The government does not cite any authority for

5    the proposition that prior parole violations or probation revocations are relevant.

6            The court notes, however, that § 3142(g) mandates that the court consider "the history and

7    characteristics of the person, *including*" the factors enumerated in the statute. As the Supreme

8    Court recently held "use of the word 'include' can signal that the list that follows is meant to be

9    illustrative rather than exhaustive." *Samantar v. Yousuf*, ___ U.S. __, 2010 WL 2160785, *6

10   (June 1, 2010) (citing 2A N. Singer & J. Singer, SUTHERLAND STATUTORY CONSTRUCTION

11   § 47.7, p. 305 (7th ed. 2007) ("[T]he word 'includes' is usually a term of enlargement, and not

12   of limitation" (some internal quotation marks omitted)). Here, the court concludes, reviewing the

13   totality of defendant's history, that his past parole and probation violations are relevant in

14   evaluating the risk of flight. The court reaches this conclusion because, although there is no

15   indication that the violations themselves involve failures to appear, they clearly implicate

16   defendant's ability to comply with court orders, including orders to appear. Moreover, the

17   Pretrial Services report is vague as to the nature of the parole and/or probation violations, and the

18   government has provided no information supplementing the Pretrial Services report in this regard.

19   The report states that on February 6, 2007, a warrant issued for a parole violation, and that on

20   February 21, 2007 a warrant issued for a probation violation. The record contains no information

21   regarding the disposition of the warrants, nor any information that would support a finding that

22   the violations bear on the risk that defendant might flee. Pretrial Services merely contacted

23   defendant's state parole agent, who stated that defendant was not "satisfactory under supervision"

24   and "served approximately 120 days for a parole violation."

25           Based on the paucity of information in the record, the court cannot find that the parole and

26   probation violations, *per se*, weigh heavily in favor of a finding that there is a risk defendant will

27   flee. If defendant had violated parole, for example, by failing a drug test, this would be a serious

28   offense that might lead to revocation in the state or federal system. See, e.g., 18 U.S.C.

14

1   § 3148(b)(1)(B) ("The judicial officer shall enter an order of revocation and detention if, after a

2   hearing, the judicial officer . . . finds that there is . . . clear and convincing evidence that the

3   person has violated any other condition of release").  It would not necessarily, however, bear on

4   the risk that defendant would flee.  Because the court has no information regarding defendant's

5   February 2007 parole and/or probation violations, it discounts this factor as too vague to support

6   detention.  See *Motamedi*, 767 F.2d at 1405 ("Doubts regarding the propriety of release should

7   be resolved in favor of the defendant").

8        The remaining factors the government cites do not support detention.  Defendant is a

9   United States citizen.  While the government suggests that defendant may be a dual citizen,

10  defendant has not been to Nigeria for a decade – indeed, at no time since his adolescence.

11  Although defendant has family in Nigeria – his mother and one sister – the remainder of his family

12  reside in the United States and his father, brother, and girlfriend reside in the Central District.

13  Defendant has lived here since age fifteen.  Defendant's father has submitted a declaration stating

14  that defendant is a U.S. and not a Nigerian citizen.[21]  Defendant has provided his employer's

15  declaration, who states that he will employ defendant at his music studio if defendant is released

16  on bond, and pay him $15 per hour for at least forty hours per week.[22]  The court therefore

17  concludes that defendant has more significant ties to the Central District than he does to Nigeria.

18       The government has expressed concern regarding the adequacy of the bail resources

19  defendant proffers, most particularly the $100,000 appearance bond without justification that

20  defendant's father proposes to post.  Although the government initially believed that defendant's

21  father was not a U.S. citizen and was in possession of a Nigerian passport, it now appears

22  established that defendant's father is a U.S. citizen who has not been to Nigeria in seven years.

23  Thus, it does not appear likely, as the government earlier intimated, that it would be difficult to

24  collect on any bond the father signed.  The $100,000 bond the father offers is in addition to a

25  $5,000 cash deposit to be provided by defendant's mother, an appearance bond without

26  _____

27       [21]Nwabueze Decl., ¶ 3.

28       [22]Declaration of Kenneth Uche ("Uche Decl."), Docket No. 35 (June 25, 2010).

1    justification for "any amount the Court deems necessary" offered by defendant's brother, Henry,

2    and defendant's girlfriend. This last bond was offered subsequent to the proceedings before Judge

3    Mumm. Both defendant's father and his girlfriend are earning between $40,000 and $50,000 per

4    year; neither, therefore, is judgment-proof.

5            The government also argues that the fact that defendant is facing "a[ ] term of

6    incarceration" justifies detention. Adopting such a view, however, would run contrary to

7    congressional intent that "[o]nly in rare circumstances should release be denied." *Motamedi*, 767

8    F.2d at 1405. There is no doubt that the conduct defendant is charged with committing is serious.

9    Defendant's alleged fraud resulted in losses of approximately $159,000. Moreover, it appears

10   that the defendant has been convicted of crimes in state court on multiple times, including certain

11   charges that imply recidivism respecting fraud crimes.

12           Although the government has not proffered the evidence on which it will rely at trial, "the

13   weight of the evidence is the least important" factor in assessing whether pretrial release is

14   appropriate. *Gebro*, 948 F.2d at 1121. The criminal complaint provides little detail regarding

15   the evidence the government will present, as it consists largely of allegations justifying a search

16   warrant. Thus, this factor does not weigh against pretrial release.

17           In sum, the court finds, based in part on information not available to Judge Mumm, that

18   Judge Mumm's finding that there is no condition or combination of conditions that will reasonably

19   assure the defendant's appearance must be vacated. Of most significance are defendant's ties to

20   this judicial district and the not insignificant surety resources offered. In particular, the $100,000

21   surety offered by defendant's father, who earns $40,000 to $50,000 per year, is significant. The

22   sureties offered by defendant's brother and his girlfriend, and the cash deposit offered by his

23   mother, bolster the court's finding. The court credits defense counsel's argument that defendant

24   has faced sentences similar to the one he may receive in this case, has been released on bond, and

25   has appeared in court consistently. Although defendant's recidivism and the seriousness of his

26   alleged fraud weigh against release, doubts concerning pretrial detention must be resolved in a

27   defendant's favor. The court therefore concludes that there are a combination of conditions that

28   will reasonably assure the defendant's appearance.

1        The court therefore orders defendant's release upon the following conditions. Defendant's

2 mother shall deposit $5,000 in cash. Defendant shall post appearance bonds totaling $125,000

3 with an affidavit of surety without justification (form CR-4). Given their local residency and

4 employment, the bonds may be posted by defendant's father and girlfriend. Defendant's brother

5 Henry must post an appearance bond in the sum of $5,000 with an affidavit of surety without

6 justification (form CR-4).

7        Defendant shall submit to pretrial supervision. Defendant has submitted a declaration

8 stating that he is unable to located his U.S. passport, which was lost years ago, that he will

9 surrender his passport if it is located and that he will not apply for the issuance of a new passport.

10 Defendant's travel is restricted to this judicial district. The defendant shall not enter the premises

11 of any airport, seaport, railroad, or bus terminal which permits exit from the continental United

12 States without court permission, shall reside as approved by pretrial services and not relocate

13 without pretrial services' permission. The defendant shall maintain or actively seek employment

14 and provide proof to pretrial services; avoid all contact, directly or indirectly, with any person

15 who is or who may become a victim or potential witness in the subject investigation or

16 prosecution, including but not limited to the co-defendants; not possess any firearms, ammunition,

17 destructive devices, or other dangerous weapons; and not use or possess any identification other

18 than in his own legal or true name, and the defendant shall not use or possess illegal drugs. The

19 defendant must participate in a home detention program and abide by all requirements of the

20 program, which must include electronic monitoring or other location verification system. The

21 defendant shall be restricted to his residence at all times except for employment, education,

22 religious services, medical treatment, attorney visits, court-ordered obligations, or other activities

23 as pre-approved by pretrial services. The defendant shall pay all or part of the cost of the

24 program based upon his ability to pay as determined by pretrial services.

25

26

27

28

### III.  CONCLUSION

Defendant's application for review of Judge Mumm's detention order is granted.  The detention order is vacated and defendant may be released under the conditions set forth in this order.

DATED: June 28, 2010

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

18

EXHIBIT C

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | | |
|---|---|---|
| Case No. | **2:22-cr-00121-FMO** | Date: May 19, 2022 |
| Title | **_USA v. Schoepflin et al_** | |

Present: The Honorable: MARGO A. ROCCONI, UNITED STATES MAGISTRATE JUDGE

| James Munoz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:    (In Chambers) ORDER RE:  RECONSIDERATION OF DETENTION ORDER**

Before the Court is an Application for Review/Reconsideration of Order Setting Conditions of Detention filed by Defendant Sean Schoepflin on April 27, 2022.  ECF Docket No. ("Dkt.") 40.  At the May 2, 2022, hearing, the government opposed the Application and the Court ordered briefing on the matter.  Dkt. 42.  The parties have filed their briefs as ordered; thus, the matter is submitted.  For the reasons discussed below, the Court **GRANTS** Defendant's Application.

### I.
### SUMMARY/BACKGROUND

Defendant is charged with wire fraud and money laundering in an alleged fraud scheme against the U.S. Small Business Administration.  Dkt. 26.  Defendant was arrested on March 18, 2022, and made his initial appearance that afternoon.  Dkts. 6; 8.  At that hearing, the government requested a detention hearing on the basis that this case involved a serious risk that Defendant will flee, under 18 U.S.C. § 3142(f)(2) ("section 3142(f)(2)").  Dkt. 7 at 4.  The Court held a detention hearing and denied bail, without prejudice to reconsideration, finding that no combinations of conditions would reasonably assure Defendant's appearance or the safety of any person or the community.  Dkt. 10 at 1.  The Court based its finding on the nature and circumstances of the offense charged, a lack of bail resources, the nature of Defendant's previous criminal convictions, and previous failure to appear or violations of probation, parole, or release.  Id. at 2.

On April 27, 2022, Defendant filed an Application for Review/Reconsideration of Order Setting Conditions of Detention ("Application").  Dkt. 40.  Defendant cited as a changed circumstance the fact that Ms. Gallarbo, the mother of Defendant's daughter, is willing to sign an affidavit of surety without justification in the amount of $50,000.  Id.

Counsel for Defendant has also obtained more information about Defendant's criminal history.  Specifically, counsel obtained a copy of a judgment and an early release order for a Texas case which demonstrated that the Texas judge had placed Defendant on a ten-year, deferred adjudication diversion with strict conditions, including the payment of a $25,000 fine, 400 hours of community service, reporting to a community supervision officer, and completely abstaining from alcohol.  Dkt. 44 at 5, 17–24.  The diversion was successful; Defendant complied, and the Texas court terminated probation six years early and dismissed the case.  Id.  Counsel also obtained a copy

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   **2:22-cr-00121-FMO**                               Date: May 19, 2022

Title      ***USA v. Schoepflin et al***

of an Arizona traffic court docket, where the court issued a warrant for Defendant's failure to
appear on a speeding ticket. Id. at 5, 24 –27. Defendant subsequently appeared for this case and, at
that appearance, the Judge dismissed both the failure to appear warrant and the underlying speeding
ticket. Id.

Finally, counsel obtained more information about Defendant's recent history:  prior to
moving to California, Defendant lived in Tucson, Arizona for around ten years. Dkt. 44 at 5–6, 15–
16. He has been very active in the free mason society there. Id. After working at a car dealership,
he started a company called Green Nicotine, which marketed itself as providing high-quality
electronic cigarettes that did not contain carcinogens and did not market to children. Id. It was
during his work as CEO of Green Nicotine that Defendant traveled to China. Id. Defendant met
Ms. Gallarbo in 2006. Id. They were together until 2010, shortly after the birth of their daughter.
Id. During a period of difficulty in Ms. Larson's life when their daughter was an infant, Defendant
stepped in and became the primary caregiver for their daughter. Id. Ms. Larson is now the primary
caregiver, though Defendant remains close with his daughter, visits her, and helps provide for her
financially. Id.

On May 2, 2022, the Court held a hearing where the government opposed the Application.
Dkt. 42. The Court ordered the parties to brief the matter, taking it under submission once the
briefing was complete. Id. On May 11, 2022, Defendant filed brief. Dkt. 44. On May 13, 2022,
the government filed an Opposition. Dkt. 47. Defendant filed a Reply on May 16, 2022. Dkt. 48.

Defendant presents two arguments: (1) the Court has authority to reconsider its prior
determination of whether the government is entitled to a detention hearing, and the new
information provided shows the government is not entitled to a detention hearing under section
3142(f)(2) because Defendant does not present a serious risk of flight; and (2) even if the Court
cannot reconsider whether the government is entitled to a detention hearing, the new information
demonstrates appropriate conditions could be imposed that would ensure Defendant's appearance.
Dkt. 44 at 7–14. Defendant also argues another point, relevant to his second argument: that the
Court cannot detain Defendant based on a finding of "danger to the community" where the
government moved for a detention hearing on the basis that Defendant poses a serious risk of flight
under section 3142(f)(2). Id. at 10–14.

For the reasons discussed below, the Court agrees with Defendant— the Court cannot
consider dangerousness in determining whether to detain an individual under section 3142(f)(2).
Accordingly, because conditions can be imposed that would reasonably assure Defendant's
appearance, Defendant's Application must be **GRANTED**.[1]

---

[1] Because Defendant is entitled to release based on Defendant's second argument, the Court does not address his first
argument.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   **2:22-cr-00121-FMO**                                    Date: May 19, 2022

Title      ***USA v. Schoepflin et al***

## II.
## DISCUSSION

**A.   THE COURT MAY NOT CONSIDER "DANGER TO THE COMMUNITY" IN A DETENTION DETERMINATION UNDER SECTION 3142(f)(2)**

**1.   Applicable law**

The Bail Reform Act ("BRA"), which governs release pending trial, "mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required." United States v. Motamedi, 767 F.2d 1403, 1405 (9th Cir. 1985) (citing 18 U.S.C. § 3142(c)(2)). The BRA authorizes the government to bring a motion for detention in (3) three situations: 1) where the defendant has been charged with certain crimes Congress has deemed especially dangerous (18 U.S.C. § 3142(f)(1)); 2) where the defendant poses a serious risk of flight (18 U.S.C. § 3142(f)(2)); and 3) where the defendant poses a serious risk of obstructing justice (18 U.S.C. § 3142(f)(2)). 18 U.S.C. § 3142(f).

**2.   Analysis**

The parties disagree on the correct interpretation of the Ninth Circuit's brief holding in United States v. Twine, 344 F.3d 987 (9th Cir. 2003) (per curiam). In Twine, the district court detained a defendant without bail on the sole basis that he posed a danger to the community being a felon in possession of a firearm pursuant to 18 U.S.C. § 922(g)(1). Id. at 987. The Ninth Circuit held:

> We are not persuaded that the Bail Reform Act authorizes pretrial detention without bail based solely on a finding of dangerousness. This interpretation of the Act would render meaningless 18 U.S.C. § 3142(f)(1) and (2). Our interpretation is in accord with our sister circuits who have ruled on this issue. See United States v. Byrd, 969 F.2d 106 (5th Cir. 1992); United States v. Ploof, 851 F.2d 7 (1st Cir. 1988); United States v. Himler, 797 F.2d 156 (3d Cir. 1986).

Id. The Ninth Circuit concluded that, because the charge of being a felon in possession of a firearm was not a crime of violence, there was no basis entitling the government to a detention hearing under § 3142(f). Id. at 987–88.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    **2:22-cr-00121-FMO**                                    Date:  May 19, 2022

Title    ***USA v. Schoepflin et al***

  Defendant argues <u>Twine</u> stands for the proposition that "where, as here, the government's entitlement to a detention hearing arises only from a serious risk of flight under Section 3142(f)(2), the Court cannot consider a person's dangerousness in making its bail determination."  Dkt. 44 at 12.  However, the government argues that <u>Twine</u> stands only for the "unremarkable" proposition "that a defendant cannot be detained based on danger unless a detention hearing is warranted in the first place pursuant to § 3142(f)."  Dkt. 47 at 15.  Reading the Ninth Circuit's brief holding in isolation, neither are unreasonable interpretations.  However, taken in context of the text of the BRA, the legislative history of the BRA, and the cases cited by the Ninth Circuit in <u>Twine</u>, the government's interpretation does not hold water.

  This Court finds particularly persuasive District Judge Morrow's reasoning in a 2010 Order considering the same issue.  Judge Morrow reviewed the cases cited by the Ninth Circuit in <u>Twine</u>, concluding that the language used in those opinions supports interpreting <u>Twine</u> as holding the government cannot request a detention hearing based solely on flight risk, and when the hearing is conducted, argue both flight risk and danger to the community:

> In <u>Himler</u>, the Third Circuit held that it was "reasonable to interpret the statute as authorizing detention only upon proof of a likelihood of flight, a threatened obstruction of justice or a danger of recidivism in one or more of the crimes actually specified by the bail statute" in § 3142(f)(1).  The court concluded that because the case did "not involve any of the offenses specified in subsection (f)(1) . . . the statute [did] not authorize the detention of the defendant based on danger to the community."  <u>Himler</u>, 797 F.2d at 160.

> In <u>Ploof</u>, the First Circuit followed the Third Circuit, concluding that:

>> "where detention is based on dangerousness grounds, it can be ordered only in cases involving one of the circumstances set forth in § 3142(f)(1).  As the Third Circuit pointed out, the Bail Reform Act created a new type of detention—preventive detention—to be invoked only under certain conditions.  Insofar as in the present case there is no longer any contention that any of the subsection (f)(1) conditions were met, pre-trial detention solely on the ground of dangerousness to another person or to the community is not authorized."  <u>Ploof</u>, 851 F.2d at 11–12.

> Similarly in <u>Byrd</u>, the Fifth Circuit concluded that "[d]etention can be ordered . . . only 'in a case that involves' one of the six circumstances listed in [subsection] (f), and in which the judicial officer finds, after a hearing, that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  <u>Byrd</u>, 969 F.2d at 109.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | **2:22-cr-00121-FMO** | Date: | May 19, 2022 |

| | |
|---|---|
| Title | ***USA v. Schoepflin et al*** |

Dkt. 44 at 69–70; USA v. Ngezelonye et al, Case No. 2:10-cr-00411-MMM, Dkt. 36 at 9–10.

Judge Morrow further reasoned that this interpretation was supported by the legislative history of the BRA because the Senate Report accompanying the Bail Reform Act stated that "the requisite circumstances for invoking a detention hearing in effect serve to limit the types of cases in which detention may be ordered prior to trial" and that "the seriousness of the offenses described in subsection (f)(1)(A) through (C) coupled with the government motion is a sufficient basis for requiring an inquiry into whether detention may be necessary to protect the community from the danger that may be posed by a defendant charged with one of these crimes." Id. (citing S. REP. NO. 225, 98th Cong., 1st Sess. at 20 (1983), 1984 U.S.C.C.A.N. 3182, 3203). These statements, considered together, appear to imply that section 3142(f)(1) is the sole basis for a Court's "inquiry into whether detention may be necessary to protect the community;" this inquiry is simply not prompted by a motion for detention under section 3142(f)(2).

Finally, Judge Morrow rejected the government's argument that interpreting Twine in this manner would contradict the previous Ninth Circuit holdings in United States v. Motamedi, 767 F.2d 1403, 1405 (9th Cir. 1985), and United States v. Walker, 808 F.2d 1309, 1311 (9th Cir. 1986):

> In United States v. Motamedi, 767 F.2d 1403 (9th Cir. 1984), the government moved for detention based solely on flight risk, not dangerousness. Id. at 404. Describing the Bail Reform Act, the court stated that the Act "permit[ted] the pretrial detention of a defendant without bail where it is demonstrated either that there is a risk of flight or no assurance that release is consistent with the safety of another person or the community." Id. at 1406. Elsewhere, however, the court emphasized that it had considered flight risk only; it held that "[b]ecause the Government has failed to establish by a preponderance of the evidence that Motamedi poses a flight risk, the motion for reconsideration [had to] be denied." Id. at 1404. In United States v. Walker, 808 F.2d 1309 (9th Cir. 1986), defendant had been charged with conspiracy to distribute cocaine, bringing the case within the category of cases delineated in § 3142(f)(1). See Walker, 808 F.2d at 1310; 18 U.S.C. § 3142(f)(1)(C) (including drug offenses for which the maximum term of imprisonment is ten years or more).

Dkt. 44 at 70–71; USA v. Ngezelonye et al, Case No. 2:10-cr-00411-MMM, Dkt. 36 at 10–11. Accordingly, Walker is not directly implicated by Defendant's interpretation of Twine, and Motamedi appears to support Defendant's interpretation just as much, if not more, than it detracts from it.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | **2:22-cr-00121-FMO** | Date: May 19, 2022 |
| --- | --- | --- |

| Title | ***USA v. Schoepflin et al*** | |

Overall, this Court can find no fault in Judge Morrow's reasoning. Indeed, as the government appears to acknowledge, their interpretation of Twine would render the holding quite "unremarkable"—so unremarkable, in fact, that the holding would seem meaningless. Under the government's interpretation, the Twine court merely reiterates what is already evident from the text of the BRA—that danger to the community is not one of the enumerated bases for a detention hearing. See 18 U.S.C. § 3142(f). The Court therefore agrees that "Twine stands for the proposition that a court may only order pretrial detention under the Bail Reform Act based on the danger a defendant poses to the community if the defendant is charged with a crime described in § 3142(f)(1)." Dkt. 44 at 71; USA v. Ngezelonye et al, Case No. 2:10-cr-00411-MMM, Dkt. 36 at 11.

Given that the parties do not seem to contest that there are new facts which could warrant reconsideration of the Court's Detention Order, the Court turns to the question of whether detention is warranted, considering risk of flight alone.

**B.   DEFENDANT SHOULD NOT BE DETAINED DUE TO FLIGHT RISK**

**1.   Applicable law**

On a motion for detention under section 3142(f)(2), "the government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk." U.S. v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991) (citing Motamedi, 767 F.2d at 1406-07). Section 3142(g) of the Bail Reform Act specifies the factors that must be considered in determining whether there are conditions of release that will reasonably assure the appearance of defendant at trial: "(1) the nature and circumstances of the offense charged, including whether the offense [is a crime of violence, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device]; (2) the weight of the evidence against the person; [and] (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse." 18 U.S.C. § 3142(g); see also United States v. Hir, 517 F.3d 1081, 1086 (9th Cir. 2008) (citing Motamedi, 767 F.2d at 1407). "Of these factors, the weight of the evidence is the least important, and the statute neither requires nor permits a pretrial determination of guilt." Gebro, 948 F.2d at 1121.

**2.   Analysis**

The government almost exclusively relies on Defendant's alleged danger to the community as justification for his detention. See Dkt. 47 at 15–16 (citing the facts that Defendant possessed multiple firearms at the time of his arrest and has a history of violent conduct). As noted above, because the government's motion for detention is based on the risk Defendant will flee, the Court cannot order Defendant detained based on dangerousness. To the extent the government argues this is an unjust conclusion, "the government's argument on this score is best addressed to Congress as opposed to the court." Dkt. 44 at 71; USA v. Ngezelonye et al, Case No. 2:10-cr-00411-MMM,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   **2:22-cr-00121-FMO**                                      Date: May 19, 2022

Title   ***USA v. Schoepflin et al***

Dkt. 36 at 11. The Court is required to abide by the BRA and the Ninth Circuit's interpretation of it.

The government also cites Defendant's failure to appear in traffic court and civil court as evidence there is a serious risk Defendant will flee. Dkt. 47 at 13. However, the Court finds Defendant's compliance with his pretrial diversion program in a criminal case much more compelling evidence that conditions can be imposed that could reasonably assure his appearance.

Turning to the section 3142(g) factors, Defendant is being charged with a non-violent crime and counsel has presented new evidence showing that Defendant has significant ties to the community, including a consistent relationship with his daughter, whom he helps to financially support. Dkt. 44 at 5–6, 15–16. His out-of-country travel has been explained in the context of his previous occupation. Id. Finally, now that counsel has been able to contact the mother of Defendant's daughter, she has expressed that she is willing to be a surety for the amount of $50,000. Id. This not only increases the amount of capital available for Defendant's bond but also demonstrates the veracity of Defendant's ties to his family. Overall, the Court finds a set of conditions can reasonably assure Defendant's appearance at trial.

## III.
## ORDER

In light of the foregoing, the Court **GRANTS** Defendant's Application to reconsider the Court's Detention Order. The Defendant is ordered released under the following conditions:

Defendant shall post appearance bonds totaling $100,000—$50,000 from Defendant, $50,000 from Guadalupe Lizette Gallarbo—filed with an affidavit of surety without justification (form CR-4) signed by Ms. Gallarbo.

Defendant shall submit to pretrial supervision directed by Pretrial Services Agency ("PSA"). Defendant shall surrender all passport and travel documents to PSA within two (2) days of his release. Defendant's travel is restricted to this judicial district and the District of Arizona, so that he may visit his daughter. Defendant shall not travel internationally without court permission, shall reside as approved by pretrial services, and not relocate without pretrial services' permission.

Defendant shall maintain or actively seek employment and provide proof to pretrial services; PSA must improve the employment.

Defendant must avoid all contact, directly or indirectly, with any person who is or who may become a victim or potential witness in the subject investigation or prosecution.

Defendant must not possess any firearms, ammunition, destructive devices, or other dangerous weapons, and must agree to a search of his person and property to ensure compliance.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.   **2:22-cr-00121-FMO**                              Date:  May 19, 2022

Title      ***USA v. Schoepflin et al***

    Defendant shall not possess or use any identification, mail matter, access device, or any identification-related material other than in his own true legal name without prior permission from PSA; Defendant must agree to a search of his person and property to ensure compliance.

    Defendant shall not use or possess illegal drugs, including state-authorized marijuana, use alcohol excessively, or use, for purposes of intoxication, any controlled substance analogue as defined by federal law or street, synthetic, or designer psychoactive substance capable of impairing mental or physical functioning more than minimally, except as prescribed by a medical doctor; Defendant must agree to a search of his person and property to ensure compliance.  Defendant must submit to drug testing.

    Finally, Defendant must appear in person in accordance with any and all directions and orders relating to my appearance in the above-entitled matter as may be given or issued by the Court or any judicial officer thereof, in that Court or before any Magistrate Judge thereof, or in any other United States District Court to which he may be removed or to which the case may be transferred. He will abide by any judgment entered in this matter by surrendering himself to serve any sentence imposed and will obey any order or direction in connection with such judgment as the Court may prescribe.  He will immediately inform my counsel of any change in his contact information, including his residence address and telephone number, so that he may be reached at all times.  He will not commit a federal, state, or local crime during the period of release.  He will not intimidate any witness, juror, or officer of the court or obstruct the criminal investigation in this case. Additionally, he will not tamper with, harass, or retaliate against any alleged witness, victim, or informant in this case.  He must cooperate in the collection of a DNA sample under 42 U.S.C. § 14135a.

    **IT IS SO ORDERED.**

                                        **Initials of Preparer**    :
                                                                   jm

# EXHIBIT D

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

| Case No. | 2:25-mj-00765-DUTY-1 | Date | February 28, 2025 |
|---|---|---|---|
| Title | United States v. Ruelas-Diaz | | |

| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |
|---|---|
| Interpreter | N/A |

| Gabriela Garcia | Not Reported | Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Custody | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Hector Ruelas-Diaz | Not | X | | | Not | X | |

**Proceedings:**   **(IN CHAMBERS) ORDER REGARDING THE GOVERNMENT'S APPLICATION FOR REVIEW OF MAGISTRATE JUDGE'S BAIL ORDER [ECF 5] AND MODIFYING BOND AND CONDITIONS OF RELEASE [ECF 10]**

Before the Court is the government's Application for Review of Order Setting Conditions of Release (the "Bail Order"). ECF 5, 6. Defendant Hector Ruelas Diaz ("Defendant" or "Ruelas Diaz") filed an Opposition to the Application. ECF 18. The Court has read and considered the moving and opposing papers and deemed this matter appropriate for decision without a hearing. For the reasons stated herein, the Court **GRANTS** the government's request to review the Bail Order but **DENIES** the government's request to either permanently or temporarily detain Defendant. The Court nevertheless **MODIFIES** the Bail Order to require a second surety and a higher bond.

## I.   **BACKGROUND**

Defendant was charged by Complaint, dated February 14, 2025, with reentry of a removed non-citizen in violation of 8 U.S.C. § 1326. ECF 1. The government alleges that Ruelas Diaz is a native and citizen of Mexico who has been previously removed from the United States six times, most recently on April 13, 2022. *Id.* ¶ 6(a), (i). Ruelas Diaz has a criminal history, which, aside from prior convictions for violations of § 1326, consists of, *inter alia*, a 2003 conviction for resisting and obstructing an officer, a 2004 conviction for transporting or selling drugs, a 2005 conviction for domestic battery, and a 2008 conviction for assault upon an officer or firefighter. *Id.* ¶ 6(b)-(d), (f).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

| Case No. | 2:25-mj-00765-DUTY-1 | Date | February 28, 2025 |
|---|---|---|---|
| Title | United States v. Ruelas-Diaz | | |

On February 24, 2025, Defendant made his initial appearance before Magistrate Judge Charles F. Eick. ECF 10. At the contested detention hearing, the government moved for detention pending trial pursuant to 18 U.S.C. § 3142(e), or in the alternative, temporary detention for 10 days pursuant to 18 U.S.C. § 3142(d). *See* ECF 3, 8, 10. Judge Eick denied the government's requests and granted Defendant's release on bond fixed at $10,000. ECF 10. Among other conditions of release, Defendant must submit to the supervision of United States Probation and Pretrial Services ("Pretrial Services") and not travel outside this district without prior approval. *Id.* Judge Eick stayed the Bail Order until 4:00 p.m. on February 25, 2025, pending an appeal by the government. *Id.*

The government timely filed its Application, continuing the stay until the appeal is resolved. ECF 5. On February 26, 2025, the Court ordered that Defendant may file a response in writing by 10:00 a.m. on February 27, 2025. ECF 17. Defendant timely filed his Opposition. ECF 18.

## II.    **LEGAL STANDARD**

In reviewing a magistrate's pretrial release or detention determination, the district court must "make its own 'de novo' determination of facts." *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). "[T]he district court is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist." *Id.* However, "[i]t should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *Id.* The district court may hold additional evidentiary hearings and consider evidence that was not presented to the magistrate. *Id.*

## III.   **DISCUSSION**

### A.    **Detention under 18 U.S.C. § 3142(e)**

"[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). "[T]he government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk." *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) (citing *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991)). "A finding that a defendant is a danger to any other person or the community must be supported by 'clear and convincing evidence.'" *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (quoting 18 U.S.C. § 3142(f)(2)(B)). In determining whether a particular defendant should be released or detained pending trial, courts must consider the factors set forth in 18 U.S.C. § 3142(g). *Santos-Flores*, 794 F.3d at 1090. "[I]mmigration

Case 8:25-cr-00072-JWH    Document 12    Filed 04/08/25    Page 68 of 73    Page ID
Case 2:25-mj-00765-DUTY    Document 10    Filed 02/28/25    Page 3 of 8    Page ID #:90
#:105

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

| Case No. | 2:25-mj-00765-DUTY-1 | Date | February 28, 2025 |
|---|---|---|---|
| Title | United States v. Ruelas-Diaz | | |

status is not a listed factor.   [It] may be taken into account, but it is not dispositive." *Id.* (internal citation omitted); *see also United States v. Motamendi*, 767 F.2d 1403, 1408 (9th Cir. 1985) (holding that, under the circumstances presented, immigration status "does not tip the balance either for or against detention").

The government argues that Defendant is both a flight risk and a danger to the community, and that there are no conditions or combination of conditions that can address the risk of flight or danger in this case.   ECF 6 at 6-7.   Defendant responds that the § 3142(g) factors weigh in favor of his release.   ECF 18 at 5-9.   The Court turns to those factors.

### 1.    *Nature and Circumstances of the Offense*

The court must consider "the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a . . . crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1).   Certain charges carry a rebuttable presumption of detention. *See id.* § 3142(e)(3).   The government contends that § 1326 is "a serious charge," carrying a statutory maximum of 20 years.   ECF 6 at 5.   This argument is not persuasive, because Section 1326 does not carry any presumption of detention or involve any of the aggravating circumstances listed under § 3142(g)(1).   This factor does not weigh either for or against detention.

### 2.    *Weight of Evidence against Defendant*

The court must also evaluate "the weight of the evidence against the person."   18 U.S.C. § 3142(g)(2).   This is "the least important of the various factors" and "may be considered only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community," not a pretrial determination of guilt. *Motamendi*, 767 F.2d at 1408.   The government argues that the evidence against Defendant is "overwhelming" given his prior convictions for violating § 1326 and his presence in this district.   ECF 6 at 6.   It contends that because Defendant received a sentence of 51 months in prison on a prior conviction for violating § 1326, "[t]he likelihood that he will receive a similar sentence in this case provides a strong incentive to flee," ECF 6 at 6.   Defendant responds that this argument "could be applied to the vast majority of defendants charged with criminal offenses, most of whom are facing the potential for *some*, if not more, prison time."   ECF 18 at 6.   The Court recognizes that the government's contention is not based on a particularly individualized assessment of flight risk.   Still, the weight of evidence against Defendant is strong, and given the potential length of his sentence if convicted, the Court finds that Defendant would have some foreseeable reason to abscond.   Thus, this factor weighs in favor of finding a risk of flight.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

| Case No. | 2:25-mj-00765-DUTY-1 | Date | February 28, 2025 |
|---|---|---|---|
| Title | United States v. Ruelas-Diaz | | |

### 3. *History and Characteristics of Defendant*

The court must also factor "the history and characteristics of the person." 18 U.S.C. § 3142(g)(3). This includes, among other evidence, "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct . . . , criminal history, and record concerning appearance at court proceedings." *Id.* § 3142(g)(3)(A).

The government argues that Defendant has "a history of flouting this country's laws," two convictions for violent offenses, and twice violated the conditions of his parole. ECF 6 at 7. It is true that multiple unlawful entries into the United States make Defendant a flight risk. *See Santos-Flores*, 794 F.3d at 1092. This gives the Court pause. However, it also observes that the remainder of Defendant's criminal history is substantially dated, with the two convictions for violent offenses and parole violations occurring in 2004 and 2008, between 17 and 21 years ago. No evidence has been presented that Defendant has ever failed to appear for court. And Defendant is not currently on probation or parole. *Cf.* 18 U.S.C. § 3142(g)(3)(B).

Defendant responds that his extensive family ties, employment record, and community ties all demonstrate that conditions of release can reasonably ensure his appearance in court. Ruelas Diaz grew up in the United States. ECF 18 at 6. Until recently, he worked two jobs cleaning and doing personal training.[1] *Id.* at 7. He has four U.S. citizen children, two of whom are minor children with his current U.S. citizen partner of 10 years. ECF 18 at 7. He helps raise his minor children and provides his partner with financial and emotional support. *Id.* His partner, who is a surety to his bond, writes that Ruelas Diaz has always been a dependable partner and father who has turned his life around. ECF 18-1 at 2-3. His minor children write that Ruelas Diaz helps them with homework and takes them to school. *Id.* at 4, 5. He cares for his mother-in-law while she receives cancer treatment. *Id.* at 2, 8-11. He also attends church with his family. ECF 18 at 7. The Court agrees with Defendant that these significant family and community ties mitigate against any risk of flight. His partner and children attest to the adverse impact Ruelas Diaz's brief absence has already had on their lives, *see* ECF 18-1 at 2-5, and their need for his presence provides a strong incentive for him to remain in this district and appear for court. On balance,

---

[1] The government notes an inconsistency in Defendant's and his partner's statements to Pretrial Services about his employment as evidence that "the surety [his partner] does not know defendant very well." ECF 6 at 7. This is not supported by the totality of evidence, which reflects, among indicia of close ties, that Ruelas Diaz and his partner are raising a family together. In addition, Defendant provides a clear explanation for the discrepancy: he may be presently unemployed, but until recently he had two jobs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

| Case No. | 2:25-mj-00765-DUTY-1 | Date | February 28, 2025 |
|---|---|---|---|
| Title | United States v. Ruelas-Diaz | | |

this factor weighs in favor of release.

### 4.    *Nature and Seriousness of the Danger Posed*

The court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). The government argues that Defendant's prior convictions for violent offenses and drug trafficking make him a danger to the community. ECF 6 at 7. Although the prior convictions are nearly, if not more, than 20 years old, the fact that Defendant has been convicted of these types of offenses in the past suggests that Defendant may pose at least some risk of harm. Thus, this factor tends to weigh against Defendant's release.

\*\*\*

Based on a totality of factors, the Court finds that Defendant poses some risk of flight and danger. However, the government has not shown that these risks cannot be addressed with appropriate conditions. The Bail Reform Act mandates that "any person charged with an offense under the federal criminal laws shall be released pending trial, subject to appropriate conditions, unless a 'judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" *Santos-Flores*, 794 F.3d at 1090 (quoting 18 U.S.C. § 3142(e)). "Only in rare cases should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant." *Id.* (citing *Motamendi*, 767 F.2d 1405). Accordingly, the Court **DENIES** the government's request for detention under 18 U.S.C. § 3142(e).

However, for the reasons stated above, the Court finds that additional conditions are reasonably necessary to ensure Defendant's appearance and the safety of others. Defendant offers that other family members have expressed willingness to serve as sureties. ECF 18 at 9. Thus, in addition to the conditions set forth in Judge Eick's Bail Order (ECF 10), the Court **ORDERS** that Defendant shall obtain a second surety to the appearance bond and **SETS** the bond at $20,000 instead of $10,000.

### B.    Temporary Detention under 18 U.S.C. § 3142(d)

In the alternative, the government requests temporary detention pursuant to 18 U.S.C. § 3142(d). ECF 6 at 8. As a general matter, "Congress chose not to exclude removable [non-citizens from consideration for release or detention in criminal proceedings." *Santos-Flores*, 794 F.3d at 1090. Section 3142(d) of the Bail Reform Act, however, "provide[s] specific procedures

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

| Case No. | 2:25-mj-00765-DUTY-1 | | Date | February 28, 2025 |
|---|---|---|---|---|
| Title | United States v. Ruelas-Diaz | | | |

to be followed when a judicial officer determines that a defendant is not a citizen of the United States or lawfully admitted for permanent residence." *Id.* The judicial officer must first determine whether "such person may flee or pose a danger to any other person or the community." 18 U.S.C. § 3142(d)(2). If these conditions are met, the judicial officer must order temporary detention not to exceed ten days, and "direct the attorney for the Government to notify . . . the appropriate official of the Immigration and Naturalization Service." *Id.* "If the immigration official does not take custody of the defendant during that ten-day period, Congress directs the court to treat the defendant in accordance with the other provisions of the Bail Reform Act, 'notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings.'" *Santos-Flores*, 794 F.3d at 1091 (quoting 18 U.S.C. § 3142(d)).

The government argues that Defendant qualifies for temporary detention under § 3142(d) because he is not a United States citizen or lawful permanent resident, and he may flee or pose a danger. ECF 6 at 10. Defendant responds that § 3142(d) does not apply where, as here, immigration authorities arrested Defendant and delivered him to the government for criminal prosecution, and even if it did, the government has not produced any evidence that he may flee or pose a danger. ECF 18 at 10. Even though the Court finds that Defendant poses some risk of flight and danger, it finds that § 3142(d) does not apply under the circumstances of this case.

Courts have observed that § 3142(d) is "a notice provision designed to give other agencies an opportunity to take custody of a defendant before a [Bail Reform Act] release order is issued." *United States v. Soriano Nunez*, 928 F.3d 240, 246 (3d Cir. 2019); *accord United States v. Lett*, 944 F.3d 467, 472 (2d Cir. 2019). "By providing these other agencies an opportunity to take custody of such persons, the [Bail Reform Act] effectively gives respect to pending cases and allows those officials to act before bail is set in the federal case." *Soriano Nunez*, 928 F.3d at 246. "[I]f immigration or other authorities choose to detain the defendant during the ten-day period, then such detention eliminates the court's 'need to determine whether to release the defendant in the criminal case pursuant to the other provisions under the [Bail Reform Act].'" *Id.*

The Ninth Circuit's discussion of the temporary detention scheme in *Santos-Flores* is instructive. In that case, as here, the defendant was apprehended by immigration authorities and later charged with violating § 1326. *Santos-Flores*, 794 F.3d at 1089-90. The court reasoned that "[r]einstatement of a prior order of removal is neither automatic nor obligatory." *Id.* at 1091. An immigration official "may decide to forego reinstatement" of a prior order of removal or it may "exercise its judgment that the public interest in criminally prosecuting a [non-citizen] is greater than the public interest in swiftly removing him." *Id.* In the latter scenario, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

| Case No. | 2:25-mj-00765-DUTY-1 | Date | February 28, 2025 |
|---|---|---|---|
| Title | United States v. Ruelas-Diaz | | |

immigration official may "elect to deliver the [non-citizen] to the United States Attorney's Office for prosecution, as it did here, instead of removing him immediately[.] Having made this choice, however, the government may not use its discretionary power of removal to trump a defendant's right to an individualized determination under the Bail Reform Act." *Id.*

Consistent with *Santos-Flores*, the Court agrees with other district courts to have reached the issue that "[w]here, as here, immigration authorities bring the defendant to the attention of federal prosecutors, and not the other way around, the temporary detention provisions of § 3142(d) do not apply." *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1136 n.3 (D. Idaho 2023). That is because immigration officials are "already aware of [the defendant]'s status as an [non-citizen], as it was the entity that conveyed him to Marshal custody." *United States v. Villatoro-Ventura*, 330 F. Supp. 3d 1118, 1135 (N.D. Iowa 2018).

The government argues that this interpretation is "flatly inconsistent" with the text of the Bail Reform Act. ECF 6 at 12. The Court disagrees, "guided by the fundamental canons of statutory construction[.]" *United States v. Neal*, 776 F.3d 645, 652 (9th Cir. 2015). Statutes must be interpreted "as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *Id.* (quoting *Boise Cascade Corp. v. U.S. E.P.A.*, 942 F.2d 1427, 1432 (9th Cir. 1991)). It is true that the conditions precedent to an order of temporary detention are (1) that the person is not a citizen of the United States or a lawful permanent resident and (2) that such person may pose a risk of flight or danger. *See* 18 U.S.C. § 3142(d)(1)-(2). However, if those conditions are met, the second half of § 3142(d) provides that the judicial officer then must direct the attorney for the government to "notify" the immigration authority and give it sufficient time to decide whether to assume custody. *Id.* § 3142(d). This notice requirement—the essential purpose of § 3142(d)—is rendered meaningless where immigration authorities initially had the non-citizen in their custody, declined to pursue immediate removal, and instead referred the defendant for criminal prosecution. *See Soriano Nunez*, 928 F.3d at 246 (describing § 3142(d) as "a notice provision").

The government contends that temporary detention still serves a purpose in such circumstances because "if immigration authorities learn that the Court plans to release the defendant while the criminal process plays out . . . they may decide that immediate removal is now the more appropriate choice." ECF 6 at 12-13. This interpretation turns the Bail Reform Act on its head. It would require the court to *first* make an individualized determination under the other provisions of the Bail Reform Act, and *then* if detention is not warranted but § 3142(d) is satisfied, nevertheless order temporary detention. But by its plain terms, the only

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CRIMINAL MINUTES – GENERAL

| Case No. | 2:25-mj-00765-DUTY-1 | Date | February 28, 2025 |
|---|---|---|---|
| Title | United States v. Ruelas-Diaz | | |

determinations a court must make prior to ordering temporary detention are the conditions precedent set forth above, *not* that the defendant has a right to release under the other provisions of the Bail Reform Act. *Compare* 18 U.SC. § 3142(d) *with id.* § 3142(e), (f), (g). Where only temporary detention for purposes of notice is at stake, the lesser finding required under § 3142(d) makes logical sense. That it should precede a more comprehensive determination of pretrial detention or release also comports with the plain text of the statute. For once a determination under § 3142(d) is made and "*if* the official fails or declines to take such person into custody during that period," *then* "such person shall be treated in accordance with the other provisions of this section." *Id.* § 3142(d) (emphasis added); *see also Soriano Nunez*, 928 F.3d at 246.

The government's reading would effectively transform the purpose of the Bail Reform Act's temporary detention scheme from providing notice of potential removability to allowing the immigration authority to reconsider its decision to defer to criminal prosecution. Not only does this interpretation lack any textual basis, but it also ignores that nothing in the Bail Reform Act limits immigration officials' authority to independently enforce the immigration laws. *See United States v. Vasquez-Benitez*, 919 F.3d 546, 553 (D.C. Cir. 2019); *Soriano Nunez*, 928 F.3d at 245 ; *United States v. Veloz-Alonso*, 910 F.3d 266 (6th Cir. 2018); *see also United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1176 (D. Or. 2012). However, by construing § 3142(d) as an "alternative" basis for continued detention in the absence of a favorable detention determination under § 3142(e), not as a notice provision as Congress intended, the government impermissibly attempts to interfere with Defendant's right to pretrial release under the Bail Reform Act. Accordingly, the Court **DENIES** the government's request for temporary detention under 18 U.S.C. § 3142(d).

### IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** the government's request to permanently or temporarily detain Defendant, but also **MODIFIES** the terms of the Bail Order, requiring a second surety and increasing the bond amount.

**IT IS SO ORDERED.**

_____    :    _____

Initials of Deputy Clerk    gga